Vincent Lee ALLRED, Appellant,

v.

HARRIS COUNTY CHILD WELFARE UNIT and George Ford, Director of Harris County Child Welfare Unit, Appellee.

No. 17593.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Dec. 31, 1980.

Windell E. Cooper Porter, J. Quincy Carter, Houston, for appellant.

Harris County Child Welfare, Linda A. Thompson, Houston, for appellee.

Before COLEMAN, C. J., and WALLACE and DOYLE, JJ.

COLEMAN, Chief Justice.

This is an appeal from a suit terminating the parental rights of Vincent Lee Allred. This appeal is unique in that Vincent Lee Allred was incarcerated before the birth of his son and has never seen him. The trial was to the court without a jury.

Vincent Lee Allred and Pamela Allred were the parents of Christopher Lee Allred. Vincent Lee was remanded to the custody of the Texas Department of Corrections in January of 1976, a date prior to the child's birth on July 25, 1976. The Harris County Welfare Unit assisted Pamela in placing the baby for adoption. Pamela's parental rights were terminated by court order on February 15, 1977. Vincent Lee initially agreed to the adoption, but prior to the rendition of a judgment of adoption withdrew his consent. At the time of this suit the child was in the home of the proposed adoptive parents with the consent of the Harris County Child Welfare Unit.

The petition for termination alleged three grounds:

## I.

That the father of the child has knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangers the physical or emotional well-being of the child.

## II.

That the father of the child has engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child.

## III.

That the father of the child has voluntarily and with knowledge of the pregnancy, abandoned the mother of the child beginning at a time during her pregnancy with the child and continuing through the birth, failed to provide adequate support or medical care for the mother of the child, and remained apart from the child or failed to support the child since the birth.

Each of these grounds for termination together with a finding that "the termination is in the best interest of the child" will support an involuntary termination of the parent-child relationship. Section 15.02(1), (D), (E), (H) and Section 15.02(2), Texas Family Code (Vernon's Supp.1980); *Wiley v. Spratlan*, 543 S.W.2d 349 (Tex.1976).

The judgment entered by the trial court recites that all of the grounds for termination alleged by the Child Welfare Unit are true. The appellant asserts that neither of these grounds for terminating his rights is supported by sufficient evidence.

In reviewing the record in this case we must determine whether the findings are supported under the proper standard of proof, that is, the clear and convincing evidence standard. This standard is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In the Interest of G. M.*, 596 S.W.2d 846, 847 (Tex.1980).

The evidence produced at the trial showed that: the appellant had been in prison from August of 1974 through October of 1975 for burglary; appellant while on parole had full knowledge that certain acts would break his parole and result in his reincarceration, effectively preventing his presence at his child's birth; during his parole appellant took drugs and sold drugs; the appellant was convicted for breaching the terms of his parole and on 12 counts of burglary which resulted in a ten year sentence in January of 1976; the appellant, prior to the birth of the child, and with knowledge of his wife's pregnancy, engaged in a course of physical mistreatment of his wife directed at terminating the pregnancy; subsequent to the child's birth appellant,

although initially not wanting to give the child up, told his wife to do "what she thought best"; appellant never contributed money towards his son's support or his wife's medical care; although appellant knew that the Welfare Department was interested in his son's case in February of 1977, he did not notify his relatives about the child until May of 1979; he has never seen a picture of his child; he stated that he did not intend to make a home for his son after the release from prison but intended to leave him with his relatives; appellant's sister stated she did not want to adopt Christopher, but would like to be "managing conservator", but that she would adopt him if the court wished it. Christopher has been in a foster home since October, 1976, and has been with the same family since March of 1977. The child was a normal and healthy three year old in a secure relationship. In the past the child has been in unstable settings and in one case suffered trauma as a result thereof. The child's parents were divorced in February 1978.

There is a strong presumption that a minor's best interest is usually served by keeping custody in the natural parent. It is based on a logical belief that the ties of the natural relationship of parent and child ordinarily furnish strong assurance of genuine effort on the part of the custodian to provide the child with the best care and opportunities possible, and, as well, the best atmosphere for the mental, moral and emotional development of the child.

*In the Interest of E. S. M.,* 550 S.W.2d 749, 757 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n. r. e.).

■ Presumptions are rules for the guidance of trial judges in locating the burden of producing evidence at a particular time. Once sufficient evidence is produced to support a finding of the nonexistence of the presumed fact, the case will proceed as if no presumption exists. *McGuire v. Brown,* 580 S.W.2d 425 (Tex.Civ.App.—Austin 1979, writ ref'd n. r. e.).

■ The evidence is sufficient to support a finding that Vincent Lee Allred has engaged in conduct which endangers the physical and emotional well-being of the child. There is evidence that after he learned that his wife was pregnant Mr. Allred beat her about the head and body with his fists; that when she remonstrated with him and told him that she feared it might cause her to miscarry, it made him mad; that he threatened to throw her down the stairs to cause a miscarriage. Mr. Allred engaged in a course of conduct prior to the conception of the child which resulted in his being placed in a penal institution. At the time the child was conceived he was out of the institution on parole. He realized the danger that his parole would be revoked if he again engaged in criminal conduct. Nevertheless he committed eight or more robberies which resulted in his parole being terminated. This is conduct which endangers the emotional well being of the child. It is not necessary that the conduct be directed at the child or that the child actually suffers injury. *Lane v. Jefferson County Child Welfare Unit,* 564 S.W.2d 130 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.); *In the Interest of B. J. B. and C. E. B.,* 546 S.W.2d 674 (Tex.Civ.App.—Texarkana 1977, writ ref'd n.r.e.); *T. D. E. v. Christian Child Help Foundation,* 550 S.W.2d 101, (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.); *H. W. J., Sr. v. State Department of Public Welfare,* 543 S.W.2d 9 (Tex.Civ.App.Texarkana 1976, no writ).

■ In a termination proceeding the court must focus upon the acts and omissions of the parent and also upon the best interest of the child. The legislature has determined that the parent cannot prevent termination when there exist acts or omissions by the parent which may indicate that the existing parent-child relationship is not a proper one and when termination is in the best interest of the child. *Holley v. Adams,* 544 S.W.2d 367 (Tex.1976). The court in *Holley v. Adams,* points out some of the factors that have been considered by the courts in ascertaining the best interest of the child. Included among these are the following:

(1) The emotional and physical needs of the child now and in the future;

(2) The emotional and physical danger to the child now and in the future;

(3) The parental abilities of the individual seeking custody;

(4) The plans for the child by the individual seeking custody;

(5) The acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(6) Any excuse for the acts or omissions of the parent.

554 S.W.2d at 372.

A consideration of these factors and the evidence before the court leads us to the conclusion that the evidence supports the conclusion of the trial court that the best interest of the child would be served by terminating the parent-child relationship.

■ The evidence also supports the termination order under § 15.02(1)(H). The evidence that Mr. Allred entered into a course of wilful criminal activity with knowledge of his wife's pregnancy and of the possible consequences of his course of conduct implied a conscious disregard and indifference to his parental responsibilities and the subsequent imprisonment for such conduct constituted "voluntary abandonment." *Hutson v. Haggard*, 475 S.W.2d 330 (Tex.Civ.App.—Beaumont 1971, no writ).

■ Mr. Allred has been in prison since long before the birth of the child, he has failed to provide any support or medical care for the mother during the period of abandonment before the birth of the child, and he has remained apart from the child and failed to support the child since birth. The trial court's finding is fully supported by the evidence. *H. W. J., Sr. v. State Department of Public Welfare*, 543 S.W.2d 9 (Tex.Civ.App.—Texarkana 1976, no writ); *Hutson v. Haggard*, supra.

■ The policy of the Harris County Child Welfare Unit appears to be that prior to seeking to terminate the parental rights of family members it will offer services designed to preserve the family unit and will seek less restrictive alternatives and less drastic measures than termination. There are no such requirements in the Texas Family Code. The trial court did not err in failing to require such conduct of the Harris County Child Welfare Unit before proceeding to trial in the case.

■ While the trial court is required to provide findings of fact and conclusions of law where timely requested, the record in this case does not show reversible error although the request for such findings was denied. At the time the request for such findings was made the trial court had denied Vincent Lee Allred the right to appeal on a pauper's oath. After the district court was required to approve Mr. Allred's application to appeal on a pauper's oath, the request for findings of fact was not renewed. In addition this court has before it a record sufficient to permit it to determine the questions presented by the appeal.

The judgment of the trial court is affirmed.