ang.187 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00187-CV







Georgina Anguiano, Appellant


v.



Texas Department of Protective and Regulatory Services, Appellee








FROM THE DISTRICT COURT OF HAYS COUNTY, 274TH JUDICIAL DISTRICT

NO. 91-0775, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING






PER CURIAM



 The Texas Department of Protective and Regulatory Services ("the Department")
filed a petition to terminate appellant, Georgina Anguiano's parental rights to her daughter D.L.A. 
The trial court determined that appellant engaged in conduct which endangered her child's
physical and emotional well-being. The trial court also found that termination was in the best
interest of the child. See Act of May 23, 1989, 71st Leg., R.S., ch. 808, § 1, 1989 Tex. Gen.
Laws 3673-74 (formerly Tex. Fam. Code Ann. § 15.021(C)(D)(E) & (F), (2), since repealed and
codified as sections 161.001(1)(C)(D)(E) & (F), (2)). Appellant brings a sole point of error,
alleging that the evidence is insufficient to support the statutory grounds for termination. We will
affirm the trial court's judgment. 



STANDARD OF REVIEW

 Appellant contends that the evidence is factually insufficient to meet the clear and
convincing standard of proof required to terminate her parental relationship. See In re G.M., 596
S.W.2d 846, 847 (Tex. 1980). In deciding whether the evidence is factually sufficient, this Court
considers and weighs all the evidence and will set aside the judgment only if it is so contrary to
the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951). The clear
and convincing standard of proof required to terminate parental rights does not alter the appellate
standard of review. D.O. v. Texas Dept. of Human Servs., 851 S.W.2d 351, 353 (Tex.
App.--Austin 1993, no writ). Because no written findings of fact or conclusions of law were
requested or filed, it is implied that the trial court made all of the findings necessary to support
its judgment. Wolford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990).



PROCEDURAL HISTORY

 On February 14, 1995, a trial was held to address the Department's request that
the court terminate the parental rights of appellant and the biological father, Robert Aishmen, to
the child D.L.A. The live pleading for appellees at the time of the termination hearing, alleged
in the disjunctive, five of the statute's possible acts of misconduct and pleaded that it was in the
best interest of the child for appellant's parental rights to be terminated. See Tex. Fam. Code §
161.001(1)(C),(D),(E),(F) & (H), (2) (West 1996). Following the hearing, the court ordered
termination based on findings that appellant 



(1) voluntarily left the child in the possession of another not the parent without
providing adequate support of the child and remained away for a period of
at least six months; and,


(2) knowingly placed or knowingly allowed the child to remain in conditions
or surroundings which endanger the physical or emotional well-being of the
child; and,


(3) engaged in conduct of knowingly placed the child with persons who
engaged in conduct which endangers the physical or emotional well-being
of the child; and,


(4) failed to support the child in accordance with his ability during a period of
one year ending within six months of the date of the filing of the petition.



The Court also found that termination of the parent-child relationship between appellant and
D.L.A. is in the best interest of the child.

 On appeal, appellant complains that the record fails to sufficiently establish that she
committed all four allegations levelled against her. She specifically avers that while each of the
allegations were pleaded disjunctively, the findings in the decree were found conjunctively and that
there is insufficient evidence to prove that she committed all four of the allegations. A petition
requesting termination of the parent-child relationship may be granted if the court finds that the
parent has engaged in any one of the statutorily enumerated activities and that termination is in
the best interest of the child. Tex. Fam. Code § 161.01; Fite v. Nelson, 869 S.W.2d 603 (Tex.
App.--Houston [14th Dist.] 1994, no writ); D.O. v. Texas Dep't. of Human Servs., 851 S.W.2d
351, 352 (Tex. App.--Austin 1993, no writ). Hence, it is irrelevant that the matters were pleaded
in the disjunctive and the findings were in the conjunctive because the statute requires only that
one of the acts be committed and that only one such finding must be supported by clear and
convincing evidence. We now turn to the sufficiency of the evidence to uphold the findings of
the trial court.



CONDITIONS AND CONDUCT THAT ENDANGERED THE CHILD


 The trial court found by clear and convincing evidence that appellant had committed
four of the five statutory acts of parental misconduct alleged by appellee. The record before us
presents overwhelming evidence of conduct by appellant that endangered the well-being of her
daughter, D.L.A. Over a five year period, appellant's recurrent acts of neglect placed her child
in situations that endangered both her physical and emotional well-being. We will review the
evidence. 

 In approximately 1980, appellant was placed on probation by the juvenile court in
Hays County. At about this same time, she was taken into protective custody by the State as a
result of acts of sexual abuse by her father. During this period, appellant became actively
involved in the practice of Satanism. Appellant would later tell her school social worker that in
1991, the year preceding the birth of her daughter, she killed a woman for money and participated
in a satanic ritual that involved drinking the blood of a human sacrifice.

 Appellant was eighteen years of age when she gave birth to her daughter on
December 12, 1990. D.L.A. remained with her mother for approximately five months before she
began her sad odyssey of being placed with families that could not provide a home for her.
Appellant first relinquished custody of her daughter when appellant was admitted to an in-patient
treatment facility for drug and alcohol abuse. She left D.L.A. with her mother, who later moved
out of the house leaving the child in the care of appellant's father. At the termination hearing,
appellant testified that she did not think that there was any danger in leaving her child with her
father, who had sexually abused appellant as a child. She stated that she did not think that there
was any danger "because it happened a long time ago." 

 Sometime later, a school social worker for teen parents at appellant's high school
was asked to seek a home for D.L.A. Through church contacts, the worker found Judy and
Dwight Williams. The couple offered to keep D.L.A. until appellant completed her treatment. 
No background check was done on the Williamses, yet with appellant's permission, they were
given possession of D.L.A. for approximately five months. After completing rehabilitation,
appellant picked up her child and took her to live in Fort Worth. She kept the child for a month
before calling the Williamses to ask "Would you like to adopt her? I cannot handle it." The
Williams accepted and appellant returned D.L.A. to their possession in August 1991 with the
intent to permanently relinquish her parental rights. 

 In September 1991, appellant requested that D.L.A. be returned to her care and the
Williamses refused. At that time, appellant was incarcerated and the Williamses stated that they
questioned her ability to care for the child. A month later appellant, through an application for
a writ of habeas corpus, sought the return of D.L.A. to her custody or the custody of her sister,
Priscilla Wojahn. On November 14, 1991, during the contested hearing, the court ordered an
emergency removal of the child from the Williamses' residence following the receipt of
information that Mr. Williams was on parole following conviction for sexual assault and
kidnapping. The court further ordered that D.L.A. be placed in a temporary shelter until the
Department had an opportunity to make a recommendation as to a suitable caretaker. The State
later placed her in a foster home until a home-study of the Wojahns was completed.

 Javier Garcia, a caseworker for the Department, testified at one of the many show
cause hearings in this case, that he met with appellant on four seperate occasions during the time
that D.L.A. was in foster care. Appellant informed him that she had a long history of drug abuse
and that she had been to a rehabilitation center for treatment. She also told Garcia that although
she attended Narcotics Anonymous four times a week, she had experienced several relapses since
her treatment and that she found it difficult to go more than two or three weeks without a relapse. 
It was during these conversations that appellant expressed her desire to have her daughter returned
to her care. In response, the Department developed a family service plan for appellant to follow
in an effort to regain custody of her daughter. 

 In May 1992, the court ordered and all parties agreed to the placement of D.L.A.
with her aunt, Priscilla Wojahn until further notice. The court also ordered that appellant have
visitation privileges. However, during her stay with her aunt, D.L.A. received few visits from
appellant. Priscilla Wojahn testified at the termination hearing that appellant often acted
inappropriately with the child during visits and that on occasion she arrived at the visit
intoxicated. D.L.A. remained with her aunt's family from May 1992 until March 1993, when
she was returned to the custody of the State. Mrs. Wojahn explained that she could no longer
afford to care for D.L.A. in addition to her own children. Once again, D.L.A. was placed in a
foster home.

 In February 1994, the court ordered appellant to attend parenting classes and to
obtain a psychological evaluation. The court ordered that a hearing would be held in six months
to review appellant's progress. In its order, the court granted the Department's request to begin
termination proceedings against appellant and the biological father of the child following the six
month period. Upon a recommendation of the Department, the court declined to order another
home-study on the Wojahn residence or the residences of other family members of appellant. The
Department also declined consideration of placement with appellant because she had failed to
maintain a stable residence. (1) 

 The termination hearing took place on February 14, 1995. The records and
testimony presented at the hearing revealed that appellant failed to complete any task assigned to
her by the Department in an effort to reunite her with her daughter. She failed to seek and attend
professional counseling sessions, she failed to obtain and maintain a suitable and stable living
environment, she failed to obtain and maintain permanent employment, she failed to attend
parenting classes, and during her intermittent periods of employment, she failed to provide
financial support for her child. (2) Moreover, appellant failed to cease her use of illegal drugs, even
though she knew that her conduct would result in the revocation of her probation and ultimate
imprisonment. Approximately five different family service plans were arranged for her and she
failed to comply with any of them. Hence, our review of the record reveals a reasonable basis
for the trial court's findings of parental misconduct. 



BEST INTERESTS OF THE CHILD

 Within the scope of appellant's challenge to the sufficiency of the evidence, she also
challenges the trial court's finding that termination of her parental rights would be in the best
interest of her child. Relevant considerations in determining the best interests of the child are:
the desires of the child; her emotional and physical needs, now and in the future; emotional and
physical danger to the child, now and in the future; the parental abilities of the individuals seeking
custody; the programs available to assist these individuals to promote the best interest of the child;
the plans for the child and the stability of the home; the acts or the omission of the parent which
may indicate that the existing parent-child relationship is not a proper one; and any excuse for the
acts or omission of the parent. Holley v. Adams, 544 S.W.2d 367, 372 (Tex. 1976).

 In determining the sufficiency of the evidence, we have reviewed the overwhelming
evidence of appellant's poor judgment in attending to the needs of her child. Moreover, the
record reflects that although appellant was given several opportunities to improve her parenting
skills, she failed to take advantage of the programs available to her. The acts and omissions of
appellant clearly demonstrate that she is unable to offer stability to her child and is incapable of
promoting her daughter's best interests. Appellant's admitted relapses with drug and alcohol
abuse are closely related to her inability to care for her daughter. Despite the Department's
numerous attempts to assist appellant in overcoming her substance-abuse problems and in
developing her parenting skills, appellant refuses to help herself. Even after the Department
conditioned appellant's parental rights on her active participation in a family service plan,
appellant did not comply. Appellant has consistently engaged in a lifestyle that endangers the
well-being of her child. Her on-going relationship with the Department and the criminal justice
system have not affected any change in her behavior. The evidence is sufficient to support the
trial court's finding that D.L.A.'s best interests are served by terminating appellant's parental
rights.



CONCLUSION

 Finding no error, we affirm the trial court's judgment terminating appellant's
parental rights. 


Before Justices Powers, Jones and B. A. Smith

Affirmed

Filed: July 17, 1996

Do Not Publish
1.   Appellant is currently incarcerated and has been sentenced to serve until the year
2002. During the three years before her current incarceration, appellant lived in six
different places, including jail. The evidence shows that in addition to institutional
confinement, appellant lived in San Marcos, Austin, Fort Worth and Waco with either
friends or family on a temporary basis. The record before us contains no evidence to
show that appellant ever attempted to stabilize her living situation. Appellant's active
participation in criminal conduct with the knowledge that her parole would be revoked is
sufficient to support the termination of her parental rights. See Wray v. Lenderman, 640
S.W.2d 68, 71 (Tex. App.--Amarillo 1982, no writ); Allred v. Harris County Child Welfare
Unit, 615 S.W.2d 803, 806 (Tex. Civ. App. --Houston [1st Dist.] 1980, no writ) (knowing
participation in criminal conduct that results in parole revocation of parent is "conduct which
endangers the emotional well-being of the child").
2.   Appellant testified at the hearing that she was employed during a portion of the time
that she was on probation and that during that time she made financial contributions to
the care of D.L.A. However, the evidence presented by the Department's caseworker
revealed that appellant's contributions toward the care of her daughter only totalled
approximately $100 for the period beginning six months before the filing of the petition
and up to the termination hearing.



ns were arranged for her and she
failed to comply with any of them. Hence, our review of the record reveals a reasonable basis
for the trial court's findings of parental misconduct.