TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-99-00009-CV







Edward Claude Corning, Appellant




v.




Texas Department of Protective and Regulatory Services, Appellee







FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 340TH JUDICIAL DISTRICT


NO. JUV93-0345-C-1, HONORABLE DICK ALCALA, JUDGE PRESIDING







 Appellant Edward Claude Corning appeals from a decree terminating his parent-child relationship with his daughter, K.C., and appointing appellee Texas Department of
Protective and Regulatory Services (the Department) permanent managing conservator. We will
affirm the decree of termination.


BACKGROUND

 K.C. was eight years of age at the time of trial. She had lived with both her
parents until August 1991, when she was approximately fifteen months old. At that time, Corning
was arrested and incarcerated, and K.C.'s mother took K.C. to live with Corning's mother, Elida
Ramirez. (1) Corning remained in prison until July 1994, when he was paroled to a substance abuse
treatment center in Midland, Texas. On August 11, 1994, K.C., who was then four years of age, 
was removed from Ramirez's home and placed in the Department's temporary managing
conservatorship, where she remained until trial in August 1998. (2) The Department notified
Corning one week later of K.C.'s whereabouts. Corning was released from the treatment center
in October 1994, at which time he returned to his home in San Angelo. 

 In February 1995, Corning approached a Department representative about the child. 
The representative advised appellant to make an appointment to discuss the matter, but he failed
to do so. Subsequently the Department made attempts to locate him but was unable to do so
despite repeated efforts. According to a Department caseworker, Corning had no contact with
K.C. from August 1991 until July 1995, although he contends that he had one contact with the
child in Ramirez's home in late July or early August 1994. In June 1995, Corning went to the
Department's office, and the Department presented him a service plan, the goal of which was
reunification with K.C. Corning did not sign the plan, though the Department advised him that
failure to agree to a service plan could result in termination of his parental rights. The
Department asked Corning to visit K.C. under a therapist's supervision. Corning initially
complied and visited K.C. three times in July 1995. A Department caseworker testified that
Corning was generally defiant, defensive, and uncooperative during those visits and at one point
was belligerent towards a caseworker. As a result, the Department reduced his visitations from
every week to every two weeks. After July 1995, Corning stopped attending the Department's
scheduled visits.

 Corning sporadically visited K.C. under the supervision of another therapist until 
August 1996. During one such visit in August 1996, Corning apparently tried to initiate an
unauthorized contact with K.C.'s mother. Following that visit, the Department filed a report
informing the court what had happened and suggesting that the visits be further reduced. The
court never acted on that suggestion, and the Department never reduced the visitations. 
Nevertheless, Corning stopped visiting K.C. entirely after the report was filed.

 In February 1997, Corning was arrested for possession of marihuana and
Amitriptyline, a controlled substance. He posted bond and was released from jail the day
following his arrest but was subsequently re-arrested in May 1997 for violating the terms of his
parole. He remained incarcerated at the time of trial.

 On June 12, 1997, the Department filed its termination action alleging constructive
abandonment under section 161.001(1)(N) of the Texas Family Code. Following the termination
hearing on August 31, 1998, the trial court found that: (1) Corning constructively abandoned
K.C., who had been in the temporary managing conservatorship of the Department for not less
than one year; (2) the Department made reasonable efforts to return K.C. to Corning; (3) Corning
did not visit or maintain contact with K.C.; (4) Corning demonstrated an inability to provide K.C.
with a safe environment within the meaning of section 161.001(1)(N) of the Family Code; and (5)
termination of the parent-child relationship between Corning and K.C. was in K.C.'s best interest. 
The court's findings track the requirements of Texas Family Code section 161.001(1)(N) and (2). (3)

 In his sole issue, Corning contends that the evidence is factually insufficient to
support the trial court's finding that he failed to visit or maintain contact with K.C. Accordingly,
we limit our discussion to Corning's sole complaint.


STANDARD OF REVIEW

 We review the trial court's findings of fact for factual sufficiency by the same
standard we apply in reviewing the factual sufficiency of the evidence supporting jury findings. 
See Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991). As the party seeking
termination, the Department had the burden to prove by clear and convincing evidence all the
elements warranting termination. See In re G.M., 596 S.W.2d 846, 847 (Tex. 1980); Neal v.
Texas Dep't of Human Servs., 814 S.W.2d 216, 222 (Tex. App.--San Antonio 1991, writ denied). 
The clear and convincing standard of proof requires "that measure or degree of proof which will
produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations
sought to be established." In re G.M., 596 S.W.2d at 847.

 The clear and convincing standard of proof required to terminate parental rights
does not alter the appropriate standard of appellate review. See State v. Turner, 556 S.W.2d 563,
565 (Tex. 1977); D.O. v. Texas Dep't of Human Servs., 851 S.W.2d 351, 353 (Tex. App.--Austin
1993, no writ). (4) In deciding whether the evidence is factually sufficient, this Court considers and
weighs all the evidence and should set aside the judgment only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. See Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951); see also
Pool v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986).


DISCUSSION

 A court may terminate a parent-child relationship if it finds that: (1) the parent has
engaged in any of the specific conduct enumerated in the Family Code as grounds for termination;
and (2) termination is in the child's best interest. See Tex. Fam. Code Ann. § 161.001(1), (2)
(West 1999); Texas Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987); D.O. v.
Texas Dep't of Human Servs., 851 S.W.2d at 352. Here, the trial court found Corning had
committed constructive abandonment, which is a ground for termination under section
161.001(1)(N). Corning contends that the evidence adduced at trial was factually insufficient to
support the trial court's finding that he had failed to visit or maintain contact with K.C.--an
element of constructive abandonment.

 The evidence is undisputed that Corning did not visit or contact K.C. after August
1996 and made no effort to do so. Corning argues that, because he thought that the Department's
report recommending a reduction in visitations meant that he could not see K.C. anymore, the
evidence was factually insufficient to support the trial court's finding that he constructively
abandoned K.C. We disagree. After August 1996, Corning never contacted the Department to
confirm the effect of the report, nor did he seek the advice of his own lawyer as to what the report
meant. It is well settled that ignorance of the law does not excuse action or inaction. See, e.g.,
Allstate Ins. Co. v. King, 444 S.W.2d 602, 605 (Tex. 1969); Bean v. State, 691 S.W.2d 773, 777
(Tex. App.--El Paso 1985, writ ref'd). By the same logic, misinterpretation of a report cannot
excuse Corning's failure to maintain contact with K.C.

 Reviewing the record, we find abundant evidence to support the trial court's finding
that Corning did not visit or maintain contact with K.C. Corning only lived with K.C. for the
first fifteen months of her life. He failed to visit or contact K.C. from October 1994 to May 1995
and again from August 1996 until the time of his imprisonment in May 1997, despite the fact that
they lived in the same town. After his three July 1995 supervised Department visits, he had only
a handful of visits with her until August 1996. The entire time he was incarcerated, Corning
never called K.C. or wrote her directly, though he testified that he was allowed to write letters
while he was in prison.

 Imprisonment of a parent, standing alone, does not constitute abandonment of a
child as a matter of law, but neither does it preclude a finding of abandonment. See Jordan v.
Hancock, 508 S.W.2d 878, 881 (Tex. Civ. App.--Houston [14th Dist.] 1974, no writ). Rather,
it is evidence to be considered by the trier of fact. While the incarceration itself may not amount
to abandonment, Corning's course of conduct that led to his imprisonment may suffice. Evidence
that a parent "entered into a course of willful criminal activity with knowledge of . . . the possible
consequences of his course of conduct implied a conscious disregard and indifference to his
parental responsibilities and the subsequent imprisonment for such conduct constituted . . .
abandonment." Allred v. Harris County Child Welfare Unit, 615 S.W.2d 803, 807 (Tex. Civ.
App.--Houston [1st Dist.] 1980, writ ref'd n.r.e.).

 At the time of trial, Corning had been incarcerated for roughly half of K.C.'s life. 
However, his imprisonment was not continuous. From the time of his release from the substance
abuse treatment center in October 1994 until his incarceration in May 1997, Corning had ample
opportunity to visit his daughter. Moreover, Corning admitted knowing that committing any
criminal offense would violate the terms of his parole and could result in his being sent back to
prison. The fact that he was arrested in February 1997 for possession of marihuana and
Amitriptyline, and again in May 1997 for violating parole, is evidence of Corning's "conscious
disregard and indifference to his parental responsibilities." Id.

 We overrule Corning's sole issue and hold that the trial court's termination decree
is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
 We affirm the judgment of the trial court.



 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Affirmed

Filed: October 7, 1999

Do Not Publish

1.   The trial court also terminated the parental rights of K.C.'s mother, Myong Huy Yie. Yie
did not appear at trial and does not appeal the decree.
2.   K.C. was removed from her grandmother's home because a sexual offender lived in the
house. Neither Corning nor Ramirez contests that removal.
3.   The Department alleged that K.C. had been in its temporary managing conservatorship for
not less than one year, as the statute then required. Act of June 16, 1995, 74th Leg., R.S., ch. 751,
§ 65, 1995 Tex. Gen. Laws 3888, 3911 (Tex. Fam. Code Ann. § 161.001(1)(N), since amended). 
By the time of trial, the statute had been amended to reduce the time requirement to "not less than
six months." Tex. Fam. Code Ann. § 161.001(1)(N) (West 1999). Corning argues that
application of the new subsection (N) would violate article 1, section 16 of the Texas Constitution. 
Corning did not raise this objection at trial. Moreover, the trial court specifically found that K.C.
had been in the temporary managing conservatorship of the Department for not less than one year,
and Corning does not challenge this finding on appeal.
4.   Corning urges us to employ a higher standard of review as used by the El Paso court of
appeals in Edwards v. Texas Department of Protective and Regulatory Services, 946 S.W.2d 130
(Tex. App.--El Paso 1997, no writ). That court concluded that cases with a higher evidentiary
standard at trial require a stricter standard of appellate review. Corning urges this Court to adopt
Edwards' reasoning and apply a stricter standard of review. In D.O., we recognized that many
courts have described an intermediate standard of appellate review, but we determined such a
standard to be incorrect. See 851 S.W.2d at 353. Therefore, we will apply the traditional factual
sufficiency standard to the evidence here.


e entire time he was incarcerated, Corning
never called K.C. or wrote her directly, though he testified that he was allowed to write letters
while he was in prison.

 Imprisonment of a parent, standing alone, does not constitute abandonment of a
child as a matter of law, but neither does it preclude a finding of abandonment. See Jordan v.
Hancock, 508 S.W.2d 878, 881 (Tex. Civ. App.--Houston [14th Dist.] 1974, no writ). Rather,
it is evidence to be considered by the trier of fact. While the incarceration itself may not amount
to abandonment, Corning's course of conduct that led to his imprisonment may suffice. Evidence
that a parent "entered into a course of willful criminal activity with knowledge of . . . the possible
consequences of his course of conduct implied a conscious disregard and indifference to his
parental responsibilities and the subsequent imprisonment for such conduct constituted . . .
abandonment." Allred v. Harris County Child Welfare Unit, 615 S.W.2d 803, 807 (Tex. Civ.
App.--Houston [1st Dist.] 1980, writ ref'd n.r.e.).

 At the time of trial, Corning had been incarcerated for roughly half of K.C.'s life. 
However, his imprisonment was not continuous. From the time of his release from the substance
abuse treatment center in October 1994 until his incarceration in May 1997, Corning had ample
opportunity to visit his daughter. Moreover, Corning admitted knowing that committing any
criminal offense would violate the terms of his parole and could result in his being sent back to
prison. The fact that he was arrested in February 1997 for possession of marihuana and
Amitriptyline, and again in May 1997 for violating parole, is evidence of Corning's "conscious
disregard and indifference to his parental responsibilities." Id.

 We overrule Corning's sole issue and hold that the trial court's termination decree
is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
 We affirm the judgment of the trial court.



 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Affirmed

Filed: October 7, 1999

Do Not Publish

1.   The trial court also terminated the parental rights of K.C.'s mother, Myong Huy Yie. Yie
did not appear at trial and does not appeal the decree.
2.   K.C. was removed from her grandmother's home because a sexual offender lived in the
house. Neither Corning nor Ramirez contests that removal.
3.   The Department alleged that K.C. had been in its temporary managing conservatorship for
not less than one year, as the statute then required. Act of June 16, 1995, 74th Leg., R.S., ch. 751,
§ 65, 1995 Tex. Gen. Laws 3888, 3911 (Tex. Fam. Code Ann. § 161.001(1)(N), since amended). 
By the time of trial, the statute had been amended to reduce the time requirement to "not less than
six months." Tex. Fam. Code Ann. § 161.001(1)(N) (West 1999). Corning argues that
application of the new subsection (N) would violate article 1, section 16 of the Texas Constitution. 
Corning did not raise this objection at trial. Moreover, the trial court specificall