Opinion issued July 29,
2010

 

 

 

 

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


 

 

In The

Court of Appeals

For The

First District of Texas

 


 
 



NO. 01-08-00345-CV

 


 
 



IN RE V.V., A minor child

 

 


 
 
 

 



On Appeal from the
313th District Court

Harris County,
Texas

Trial Court Cause No. 2006-10410J

 

 


 
 
 



EN BANC OPINION

On November 7, 2006, a child was born
with opiates in her system.  J.V., her
putative father, was in jail and not married to the mother, so the state
assumed her conservatorship.  Testing
later confirmed that J.V. is her father. 
With the child never having left state care, the Department of Family
and Protective Services (“DFPS”) sought to terminate the father’s parental
rights, on the ground that he had placed the child in danger.  The trial court agreed, and terminated the
parental rights of the father to this child.

The father appealed, contending that
the evidence is insufficient to support the trial court’s decision, and that
his trial court counsel was incompetent. 
A panel of our court reversed the trial court and rendered judgment in
favor of the father.  The panel held that
the father’s conduct did not support a finding that he had endangered his
child.  In an alternative holding, the
panel also decided that trial counsel’s performance was so deficient that the
father was wholly deprived of counsel, and that the father need not show that
it was counsel’s deficiencies, instead of the father’s own conduct, that caused
the trial court to terminate his parental rights.

But a parental termination case does
not confer the right to parent—rather, it adjudicates its forfeit in the
absence of any parenting.  The father
here has not provided care for (nor even inquired to DFPS about) this child.  He is a parent in the biological sense
only.  DFPS twice moved for rehearing en
banc, and the panel twice revised its opinion, thus mooting the en banc
request.  DFPS moved for en banc
consideration for the third time. 
Concluding that the case warranted en banc review, a majority of our
court has voted to reconsider this case. 
See Tex. R. App. P.
49.7.  We hold that the evidence supports
the trial court’s finding of endangerment. 
We therefore affirm the decree terminating the parent-child relationship
between the father and the child.  We
further hold that, because the father has made no showing that the outcome of
this case probably would be different save for his counsel’s performance, as is
his burden, the father’s claim does not support reversal for ineffective
assistance of counsel.

We withdraw the panel’s March 25,
2010 opinion, substitute this opinion in its place, and vacate the panel’s March
25, 2010 judgment.

Background

At V.V.’s birth, both she and her
mother tested positive for opiates, and the mother told a caseworker that the
father of the child was in jail for robbery. 
Four days later, on November 11, 2006, DFPS sued for the protection of
the child and for conservatorship.  DFPS
also sought a paternity test of the child’s father.  If he could not or would not reunite with his
child, then DFPS asked that the trial court terminate his parental rights to
the child.  Constables served the father
with the lawsuit and citation in the Harris County Jail.  The father did not appear at the adversary
hearing later that day because he was incarcerated.

The trial court appointed an attorney
ad litem for the father of the child until paternity was established, in
January 2008, when the father appeared in court, and agreed to take a paternity
test.  The attorney ad litem, now acting
as the father’s appointed trial counsel, filed an answer on the father’s behalf.  Meanwhile, the child’s mother decided to
voluntarily relinquish her parental rights to the child.

The Trial

The case proceeded to a non-jury
trial on April 9, 2008.  The father’s
trial counsel informed the trial court that the father was in jail, and he
asked the trial court for a bench warrant and a continuance to secure his
client’s attendance at the trial.  The
trial court denied counsel’s request. 
DFPS then called its caseworker as a witness.

Counsel for DFPS asked the caseworker
about how the child came into state care. 
Before the witness answered, the trial court stated that it would take
judicial notice of the court’s file, including “the affidavit that describes
the reason the child was taken into care.”[1]  Counsel made no objection.  Thereafter, the caseworker testified that
DFPS placed the child with a relative’s family for foster care, and that the
family was meeting the child’s physical and emotional needs.  She explained that the father was in jail when
this case began, and that constables personally had served him in November
2006.  The caseworker recounted that her
first contact with the father was in January 2008 when he appeared in court and
agreed to a paternity test.  The father
made no contact with DFPS after testing confirmed that he is the father of the
child.  The father has not made any
attempts to check on his daughter’s welfare. 
She has never been in his care.

The caseworker testified that the
father had an extensive criminal record. 
The DFPS offered documents proving the father’s criminal record into
evidence, without objection.  These
records show criminal convictions for: 
unauthorized use of a car (twice), theft from a person, driving while
intoxicated (twice), evading arrest, criminal assault, and felony theft
(twice).  In addition, the father was
charged with aggravated robbery, but the state eventually dismissed this charge
due to a missing witness.

Days before the trial in this matter,
the father assaulted the child’s mother. 
The state charged him with criminal assault on a family member, and DFPS
offered a copy of the resulting criminal charge, without objection.  DFPS also offered photos, identified by the
caseworker as reflecting the father’s assault of the mother.  The father’s counsel objected to this
proffer:  “Judge, object, goes to the
criminal side.”  The trial court
overruled this objection.

The caseworker further testified that
the father has no relatives to care for the child and that he had not bonded
with the child.  The child had resided
with her current family for at least 14 months before the trial.  This family has provided a “very stable”
environment for the child and she has “very much” bonded with them.  The caseworker opined that it was in the best
interest of this child to remain in the care of her placement family; and it
was not in the child’s interest to reside with her father.  Finally, the caseworker testified that the
father had engaged in conduct that endangered this child, and that the father’s
parental rights should be terminated because the father had 10 years of
repeated criminal history, and had assaulted the child’s mother.

The father’s trial counsel did not
cross-examine the caseworker, who was the only witness at trial.  The reporter’s record of the trial transcript
is 5 pages, plus 38 pages of exhibits evidencing the father’s criminal
convictions and other charged offenses.

In its termination order, the trial
court found that the father had “engaged in conduct or knowingly placed the
child with persons who engaged in conduct which endangers pursuant to
§ 161.001(1)(E) of the Texas Family Code.” 
See Tex. Fam. Code. Ann.
§ 161.001(1)(E) (Vernon Supp. 2009) (“The court may order termination of
the parent-child relationship if the court finds by clear and convincing
evidence . . . that the parent has . . . engaged in conduct or knowingly placed
the child with persons who engaged in conduct which endangers the physical or
emotional well-being of the child[.]”). 
As required, it further found that terminating the father’s parental
rights was in the child’s best interest. 
See id. § 161.001(2) (Vernon Supp. 2009).  The trial court also terminated the mother’s
parental rights in accord with her voluntary relinquishment of those rights.

Post-Trial Events

Trial counsel moved for a new trial
and filed a statement of appellate points, a request for findings of fact and
conclusions of law, and a notice of appeal. 
The trial court did not file findings or conclusions, and trial counsel
never filed a notice of past due findings of fact and conclusions of law.  See Tex.
R. Civ. P. 297.  In his new trial
motion, trial counsel contended that his “oral motion for continuance to allow
[the father] to be brought over from the Harris County Jail should have been
granted.”  In his statement of appellate
points, trial counsel contended that the trial court had erred in denying the
father the right to testify because he was available to do so; that the
evidence is legally and factually insufficient to support the trial court’s
termination finding; and that a trial without the attendance of the father
violated the father’s due process rights. 
The trial court denied the new trial motion, appointed the father’s
trial counsel as his appellate counsel, and found the appeal frivolous.

Trial counsel subsequently filed the
father’s appellate brief in this court, in which he argued that the trial court
erred in deciding that this appeal is frivolous, and he asked our court to
review the complaints he asserted in the trial court in the father’s motion for
new trial.  After reviewing the record
and trial counsel’s appellate brief, a panel of this court concluded that the
father’s appeal is not frivolous, and that the briefing was inadequate.  The panel struck trial counsel’s brief as
inadequate, and abated this appeal with a request to the trial court that it
appoint new counsel.  The panel ordered
new briefing including, if appropriate, a challenge to the effectiveness of
trial counsel’s assistance.

Child
Endangerment 

The father
argues that no evidence in the record supports the finding that he engaged in
conduct that endangered the physical or emotional well being of the child.  We disagree. 
The record—sparse though it is—reveals the father’s assault on the
child’s mother days before the parental termination hearing, his bad choices
leading to repeated imprisonment, his wholesale lack of parenting beyond the
moment of conception, and a child left in the care of the state at birth
because the father was in jail and the mother had ingested opiates during the
pregnancy.  The child was born with opiates
in her system, and her mother later voluntarily relinquished her own parental
rights.  In ruling a parenting forfeit, the
trial court reasonably credited the evidence of the parenting void in this
child’s life and the father’s inability to safeguard the child’s physical and
emotional well-being.  A lack of all
contact with a child without any proffered excuse and no effort to ensure her
safety—coupled with multiple episodes of incarceration and an assault on the
mother—is legally sufficient to support a termination finding based on
endangerment.  An infant who is not
looked after by either of her parents, as this one was not, undeniably is in
serious danger of physical and emotional injury.  Settled authorities have upheld termination based
on endangerment in these circumstances.  Our
citizenry accords parental rights “only to those fit to accept the accompanying
responsibilities.”  In re A.V., 113 S.W.3d 355, 361 (Tex. 2003) (quoting In re J.W.T., 872 S.W.2d 189, 195 (Tex. 1994)); see also Tex. Fam. Code
Ann. § 153.001 (a)(2) (Vernon
1999) (“The public policy of this state is to . . . provide
a safe, stable, and nonviolent environment for the child.”).

Standard of Review

A parent’s
right to the companionship, care, custody, and management of his child is a
constitutional interest.  Troxel v.
Granville, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060 (2000).  Thus, clear and convincing evidence must
support a trial court’s decision to terminate a parent’s rights.  In re J.F.C., 96 S.W.3d 256, 263–64
(Tex. 2002).  We review that evidence in
a light favorable to the trial court’s finding of termination, and we assume
that the trial court resolved disputed facts in favor of its finding if such an
assumption is reasonable.  Id. at
266.  Clear and convincing evidence is
the measure of proof that firmly convinces the fact finder of the truth of the
allegations sought to be established.  See Tex.
Fam. Code Ann. § 101.007 (Vernon 2008). 

Legal Sufficiency

The trial
court found that the father had “engaged in conduct or knowingly placed the
child with persons who engaged in conduct which endanger[ed] the physical or emotional well-being of the
child.”  See id. § 161.001(1)(E).

Intentional
criminal activity that exposes a parent to incarceration is conduct that
endangers the physical and emotional well-being of a child.  Tex.
Dep’t of Human Servs. v. Boyd, 727
S.W.2d 531, 533 (Tex. 1987) (“[I]mprisonment is certainly a factor to be
considered by the trial court on the issue of endangerment.”); Allred v.
Harris County Child Welfare Unit, 615 S.W.2d 803, 806 (Tex. Civ.
App.—Houston [1st Dist.] 1980, writ ref’d n.r.e.) (evidence of father’s
commission of numerous robberies was relevant to endangerment determination);
Avery v. State, 963 S.W.2d 550, 553 (Tex. App.—Houston [1st Dist.] 1997, no
writ) (parent’s past criminal conduct, before and after child’s birth relevant
to showing of inability to parent).[2]

In Boyd, the father of the child was in
jail at the child’s birth.  727 S.W.2d at
533.  He saw the child eight months later
upon his release on parole, lived with her for 5 months, and then returned to
jail for burglary.  Id.  The evidence was “vague,
at best” as to whether he ever supported the child.  Id.  He was not married to the mother, and no
adjudication of paternity took place until the termination hearing.  Id.
at 532.  Reversing the court of appeals,
the Texas Supreme Court concluded that such evidence can support a termination
finding based on endangerment.  Id. at 533.  The Court expressly disagreed with the court
of appeals’ conclusion that danger under section E “cannot be inferred from
parental misconduct.”  Id. 
It can.

Boyd’s vitality
continues unabated.  Last year, relying heavily
on its principles, the Texas Supreme Court reversed the court of appeals in J.O.A., and found the evidence legally
sufficient to support the trial court’s termination of the father’s rights
based on endangerment without any bad conduct directed toward the children
involved.  In re J.O.A., 283 S.W.3d
336, 345–46 (Tex. 2009).  It did so
because: (1) the father “had a history of domestic violence” toward the
mother and had admitted to marijuana use, and (2) he was incarcerated on
criminal charges that were later dismissed. 
Id. at 346.  It did so despite the father’s efforts, after
DFPS involvement, to improve:  engaging
in supervised visits with his children, securing steady employment, and
completing parenting classes.  Id.  In J.O.A., the high court reaffirmed the
principle in Boyd that “endangering
conduct is not limited to actions directed toward the child.”  Id. at
345 (quoting Boyd, 727 S.W.2d at 533).

Here, the
father has an extensive criminal history. 
He was incarcerated in the Harris County Jail in November 2006 at the
time the child was born and when DFPS removed the child two days later and sued
to terminate his parental rights.  He was
incarcerated when the final hearing terminating his parental rights took place.
 While the record in this case does not
disclose drug use, it reveals the same irresponsible choices that deprived this
child of a parent:  repeated criminal
conduct leading to incarceration before and after the child’s birth, and—worse
than the father in J.O.A.—no effort
to care for his daughter when not incarcerated. 
Four of this father’s eight convictions are for felonies, and his
offenses include assault and other crimes against the person.  A life of crime—based on the number of
crimes, the frequency of their commission, and repeated incarcerations over a
decade—is evidence from which a reasonable fact finder could infer endangerment
to a child committed to the offender’s care. 
While not conduct directed at his child, such conduct is clear and
convincing support for the trial court’s termination decision based on the
ground of endangerment because this conduct placed his infant child in
jeopardy.  J.O.A., 283 S.W.3d at
347; Boyd, 727 S.W.2d at 533–34 (“endanger” under Section E means to
jeopardize the emotional or physical well-being of a child); see also In re C.H., 89 S.W.3d 17, 28
(Tex. 2002) (criticizing court of appeals for failing to account for father’s
pattern of conduct that is “inimical to the very idea of child-rearing,”
including conduct displaying criminal proclivities and fact that father had
seen child only twice).

The dissent
discounts Boyd and the cases that
follow it and rejects their applicability to these facts by isolating
imprisonment as never the sole factor supporting endangerment.  In rejecting the trial court’s reliance on
the father’s criminal history to support a finding of endangerment, the dissent
rejects the principle that a criminal record can support such a finding, much
as the court of appeals in Boyd
did.  The dissent here does so with more
evidence of bad conduct (domestic violence) and less evidence of contact with
the child (none).  It is here that the
dissent departs from pronouncements that we are duty bound to obey.  This case is more similar to Boyd than different:  it involves imprisonment and other factors,
too, namely:  (1) the father has not
inquired about or supported the child or made any effort to see to her needs,
and (2) he assaulted the child’s mother two weeks before the hearing,
leading to his incarceration, this time for domestic violence.

The dissent
strains against the record to infer that no evidence exists to allow for a
finding that the father did not care for or check on the welfare of the child
during the entirety of her life—albeit tacitly conceding that he did not do so
in the months after he received the results of the paternity test.  Such an interpretation does not view the
evidence in a light favorable to the fact finder, who saw the questioning of
the witness and heard the words spoken, words that were not date
restricted.  See In re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005).  The record shows:  

[Counsel]: He knows he is the father, and since then
has he

made any contact with the Agency?

 

[Washington]: No, he has not.

 

[Counsel]: And has he made any attempts to check on
the

welfare of the child?

 

[Washington]:
No, he has not.

          The
trial transcript, now incorporated into the dissent, bears this out:  the father has not made any attempt to check on the welfare of this child.  Because the child has been in DFPS custody
since she was two days old, the father could have had contact with the child
only by contacting DFPS.  This evidence
permits a reasonable inference that the father has had no contact with the
child.  

          Other
record evidence, not included in the dissent, further supports this
conclusion.  The child has not been in
the father’s care since her birth.  The
criminal records, admitted into evidence as exhibits without objection,
demonstrate the father’s incarceration while the child was in state-arranged
foster care, including his arrest for domestic assault on the child’s mother on
March 29, 2008, just days before the April 9 final hearing in this case.  Similarly, the affidavit of Charis Heiskell, which
contains facts that the trial court judicially noticed without objection,
describes a child referred to state care at birth because both she and her
mother “tested positive for Opiates” and the father was “in jail for robbery.”

The dissent
discounts the father’s criminal assault on the mother and his arrest for that
conduct, conduct that landed him in jail at the time of the termination
hearing, by observing that the father had been charged with the offense but not
yet convicted.  Contrary to the dissent’s
view, evidence of an assault does not lose all legal significance to a trial
court because the parental termination case comes ahead of the criminal
trial.  Texas courts routinely consider
evidence of parent-on-parent physical abuse in termination cases without
specifically requiring evidence that the conduct resulted in a criminal
conviction.  See, e.g., In re W.S.M.,
107 S.W.3d 772, 773 (Tex. App.—Texarkana 2003, no pet.) (observing that
evidence showed that father beat child’s mother while she was pregnant); Allred, 615 S.W.2d at 805 (reciting that
father physically abused mother); see
also In re K.L.R., 162 S.W.3d 291, 305 (Tex. App.—Tyler 2005, no pet.)
(stating that, in modification proceeding, evidence of parent’s pending charges
is admissible to determine best interest of child); In re M.R., 975 S.W.2d 51, 55 (Tex. App.—San Antonio 1998, pet.
denied) (holding same in conservatorship proceeding).[3]  The trial court reviewed and considered
photographs that displayed the mother’s injuries.  We must assume that they support its findings
because the father does not assign their consideration as error, the trial
court overruled the father’s objections to their consideration, and no party
made them part of the appellate record.  See In re D.A.P., 267 S.W.3d 485, 487 (Tex. App.—Houston [14th Dist.] 2008, no pet.)
(“Generally, absent a complete record of the proceedings, reviewing courts must
presume that the evidence before the trial judge was adequate to support the
decision.”).  

None of the
excuses for abandoning this infant girl—confinement in jail, inadequate notice
of impending fatherhood, insufficient assistance from the DFPS—overcome the
fundamental truth that the father’s conduct placed this infant in danger.  The father has never seen the child, paid
support, or made any arrangements to provide her with food, clothing, shelter
or care.  He has spent a good deal of his
adult life engaging in criminal activity or incarcerated.  These facts and his assault against the
mother days before the hearing were before the trial court.  They reflect conduct that jeopardizes this
child’s physical and emotional well-being.[4]  All are reasons that other courts have upheld
termination.  We reject the father’s
contention that the evidence does not support a finding of endangerment.  We hold that the evidence sufficiently
supports the trial court’s firm conviction that this father engaged in a course
of conduct that endangered the physical and emotional well-being of the
child.  See Tex. Fam. Code Ann. § 161.001(1)(E);
Boyd, 727 S.W.2d at 531.

 

Child’s Best Interest

The father
also challenges the legal and factual sufficiency of the trial court’s finding
that the child’s best interest is served by terminating the father’s
rights.  In determining the best
interests of a child, courts examine:  (1)
the desires of the child; (2) the emotional and physical needs of the child now
and in the future; (3) the emotional and physical danger to the child now and
in the future; (4) the parental abilities of the individual seeking
custody; (5) the programs available to assist the individual; (6) the plans for
the child by the parent and the individual seeking custody; (7) the stability
of the home; (8) the parent’s acts or omissions that indicate that the existing
parent-child relationship is not a proper one; and (9) any excuse for the
parent’s acts or omissions.  Holley v.
Adams, 544 S.W.2d 367, 371–72
(Tex. 1976).  The Holley factors
are not exhaustive; some listed may not apply, while others not included on the
list may also be appropriate.  C.H., 89 S.W.3d at 27.

Applying
these factors, we observe that the child was about a year and a half old at the
time of the trial and thus was too young to testify about her desire, but it is
undisputed that she has not bonded with her father because he has not taken
care of her since her birth.  See In re B.M.R., 84 S.W.3d 814, 820
(Tex. App.—Houston [1st Dist.] 2002, no pet.). 
In contrast, she was “very bonded” with her foster family, and had lived
there since she was four months old.  The
father’s frequent incarceration leaves the child without a stable environment
and without any reliable source for food, clothing, shelter, and emotional
support.  The trial court also reasonably
could have inferred that the father’s consistent, and at times violent,
criminal conduct would put a child in his custody in emotional and physical
danger now or in the future.  The
father’s pattern of conduct calls into question whether he is capable of
parenting.  The father has not attempted
to seek information about his daughter’s well being, let alone reunification
with her, save for one appearance in the trial court in which he agreed to take
a paternity test.  Even after those
results confirmed he was the father, he did not inquire about the child or seek
to care for her, though free from jail at the time.  Instead, he had an altercation with the
child’s mother and stood accused of criminally assaulting her.  The father has not contacted DFPS or sought
services that might assist him in improving his parenting skills.  The father offered no excuse for his behavior
at trial.

In challenging
the sufficiency of the evidence of the child’s best interest, the father notes
that the trial court did not determine whether the child had any special needs,
whether the opiates in her system injured her development, and whether DFPS
made any effort to contact paternal relatives to care for the child.  This ignores the caseworker’s testimony that
the child is in a kinship placement and is doing well.  We conclude that legally and factually
sufficient evidence supports the trial court’s finding that termination was in
the best interest of this child.

Effective Assistance of Counsel

The father further contends that he
is entitled to a new proceeding because his trial counsel’s performance was so
patently deficient that he was denied any meaningful assistance of
counsel.  The Texas Family Code requires
the appointment of counsel to represent an indigent parent who opposes the
termination of his parental rights.  Tex. Fam. Code Ann. § 107.013(a)(1) (Vernon Supp.
2009).  The Texas Supreme Court has held
that this statutory right to counsel “embodies the right to effective counsel.”  In re M.S., 115 S.W.3d 534, 544 (Tex.
2003). 

According to the father, counsel’s
performance was so deficient that it was tantamount to having no lawyer at all
and therefore triggers a presumption that it changed the outcome of the
case.  See Strickland v. Washington,
466 U.S. 668, 692, 104 S. Ct. 2052, 2067 (1984); United States v. Cronic,
466 U.S. 648, 654–55, 104 S. Ct. 2039, 2044 (1984).[5]  Our dissenting colleagues agree with this
position.  Our concurring colleague sides
with the DFPS’s position that this record does not dictate that counsel offered
unreasonable representation given the facts presented.  

We do not review claims of trial
error in a vacuum.  Rather, we must
examine the entire record and determine whether the error caused an improper
judgment.  See Strickland, 466 U.S. at 695, 104 S. Ct. at 2069 (in determining
whether prejudice resulted from the deficient performance of counsel, “a court . . . must
consider the totality of the evidence before the judge or jury”); Tex.
R. App. P. 44.1 (reversible error in a civil case requires the court of
appeals to conclude that the error complained of probably caused the rendition
of an improper judgment or probably prevented the appellant from properly
presenting the case to the court of appeals). 
The standard of review for evaluating ineffective assistance claims in
parental termination cases bears this out.

Standard of Review

In evaluating claims of ineffective assistance of counsel in
civil parental-rights termination cases, we begin with  the standard set forth by the United States
Supreme Court for criminal cases in Strickland v. Washington.  M.S., 115 S.W.3d at 544–45 (citing Strickland, 466 U.S. at
687, 104 S. Ct. at 2064).  Under
the Strickland standard, a parent
must show both that (1) his attorney’s performance was deficient and fell below
an objective standard of reasonableness, and (2) the deficient performance
prejudiced his defense.  Id. at 545; Strickland, 466
U.S. at 684–87, 104 S. Ct. at 2063–64.

Prejudice and the Second Prong

In its
parental termination jurisprudence, the Texas Supreme Court has focused on Strickland’s second prong, holding that an ineffective assistance of counsel
claim “requires more than merely showing that appointed counsel was
ineffective.”  J.O.A., 283 S.W.3d at
344.  The parent must also show that
“counsel’s deficient performance prejudiced the defense.”  Id. (quoting
Strickland, 466 U.S. at 687, 104
S.Ct. at 2064).  To show prejudice, the
parent “must show that there is a reasonable probability that, but for
counsel’s unprofessional errors, the result of the proceeding would have been
different.”  Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.  In this context, “[a] reasonable probability
is a probability sufficient to undermine confidence in the outcome.”  Id.

Here, the
father makes no attempt to demonstrate that counsel’s inadequacy caused the
trial court to make the wrong decision. 
Instead, he emphasizes the brevity of the trial transcript of his
parental-rights termination trial, and that trial counsel:  failed to secure the father’s attendance at
the trial, and failed to object when the trial court took judicial notice of
facts in its file, to object to some of the criminal records DFPS offered that
were not authenticated, to properly object to the introduction of evidence of
the father’s assault on the mother, and to cross-examine the caseworker or to
offer any evidence on behalf of the father. 

Based on
these factors, he suggests that we presume error and ignore the second prong of
Strickland.  We decline the father’s invitation.  The Cronic
case, upon which the father relies for support for his suggestion, is at
one end of the continuum of Strickland
cases.  See United States v. Cronic, 466 U.S. 648, 104 S. Ct. 2039
(1984).  This case does not match it—for
starters, we have no record to determine whether counsel followed his client’s
instructions with respect to the vigor of his defense, or whether counsel could
have invoked any defenses beyond easily cured objections to admissible
evidence.  See id. at 659 & n.26, 104 S. Ct. at 2047.  This case is not one in which the father was
constructively denied counsel because the appointed lawyer “entirely failed” to
subject the prosecution’s case to meaningful adversarial testing.  Cronic,
466 U.S. at 658–59, 104 S. Ct.
at 2039; see also Bell v. Cone, 535
U.S. 685, 696, 122 S. Ct. 1843, 1851 (2002). 
The father had a lawyer, and Justice Keyes’s concurrence points out the
strengths of that representation in contrast with the dissent’s view of its
weaknesses.  And, the dissent’s entire
discussion of counsel’s poor representation is dicta—because, in the end, the
dissent would reverse and render judgment in favor of the father, not grant a
new trial based on counsel’s ineffectiveness. 
Whatever wrong trial counsel’s failings wrought does not preclude the
dissent from concluding that the DFPS’s case lacks any legal merit—rather, the
dissent would hold that this father is a parent by court decree.

Texas law
burdens the father seeking reversal of the trial court’s decision with
demonstrating a reasonable probability that he would have been awarded custody
of this child save for his trial counsel’s ineptness.  See
M.S., 115 S.W.3d at 546 (“Counsel’s
failure to ensure recording of voir dire, the charge conference, and closing
arguments does not constitute ineffective assistance of counsel without a
showing of harm, and [this parent] has not shown that she was harmed by the
lack of a complete record.”).  When
presented with such evidence, DFPS would have the opportunity to rebut it—an
opportunity not afforded to it when the second prong of Strickland is replaced by appellate fiat.  To give an example, the father chastises
trial counsel for making an invalid objection to testimony about the father’s
assault on the child’s mother, and the authenticity of documents reflecting the
accompanying criminal charges that the trial court admitted into evidence.  If the father is put to his Strickland burden, then the DFPS could
respond that the father since has been convicted of criminal conduct associated
with that assault—a fact that the DFPS has asked us to judicially note.  DFPS could also contest the probable success
of an objection to this evidence, and the ways it would have cured any of its
own proof deficiencies had they been pointed out by the father’s trial counsel.  See In
re J.W., 113 S.W.3d 605, 616 (Tex. App.—Dallas 2003, pet. denied) (failure
to object to admission of criminal record not ground for ineffective
assistance).  It is unlikely that
counsel’s failures obscured the truth on this matter.

          The
second prong of Strickland requires a
showing that the outcome of this case probably would have been different had
counsel done a better job.  Having
adopted the Strickland standard in
parental termination cases, it is the Texas Supreme Court that should reject it
when it proves unworkable.  It is not
unworkable here.  As a case that involved
both a legal sufficiency challenge and a meritorious ineffective assistance
claim, M.S. provides this court with
an analytical road map:  in that case,
the Texas Supreme Court remanded for further consideration of the ineffective
assistance claim, where any harm could be examined or cured, but found the
evidence legally sufficient to uphold the trial court’s finding of
endangerment.  M.S., 115 S.W.3d at 550
(holding that failure to record proceedings not ineffective without any showing
of harm, but remanding to determine whether failure to preserve factual
sufficiency was objectively reasonable); see
also Cronic, 466 U.S. at 666–67 n.41, 104 S. Ct. at 2051 (“Should
respondent pursue claims based on specified errors made by counsel on remand,
they should be evaluated under the standards enunciated in Strickland v. Washington.”). 
Following J.O.A. and the Texas
Supreme Court’s holding in M.S., we
uphold the requirement announced in Strickland’s second prong, and we place the burden
on the father to show that the outcome of this trial would have been different
had counsel provided him with a good defense—and that a good defense was
available, had more facts come to light. 
Because the father did not have that opportunity with new counsel, he
may request that we abate the case to the trial court for a hearing to
determine whether any deficiency in counsel’s performance affected the outcome
of the case.  If it did, the trial court should
make appropriate findings and recommend that we grant a new trial.  Such a hearing must be requested and
conducted, and any findings and recommendation for new trial be forwarded to
this court before the expiration of our plenary power.[6]  Absent further proceedings, we uphold the termination
order and the trial court’s judgment.

Conclusion

A father’s
right to parent his child is one of constitutional dimension—to a caring father,
one of more importance than the right to his own life or liberty.  But a child’s right to basic human dignity
and necessity is no less a right under the law. 
It, too, must be protected.  See A.V., 113 S.W.3d at 361 (“[T]he rights of natural parents are not absolute;
protection of the child is paramount.” (quoting J.W.T., 872 S.W.2d at 195)). 
In this case, the father requested that we favor the one over the other
to an extraordinary extent, out of conformity with existing precedent,
warranting en banc consideration by the court. 
We affirm the trial court’s decree that terminates the father’s parental
rights to the child.  All pending motions
are denied as moot.

 

 

 

Jane Bland

Justice

Justice Bland, joined by Chief Justice Radack, and by
Justices Alcala, Hanks, and Massengale, for the en banc court.

 

Justice Jennings, dissenting, joined
by Justice Higley.

Justice Keyes, concurring in part and dissenting in
part.

 

Justice Sharp, dissenting, in an opinion to follow.

 

Justice Massengale, concurring, joined by Justices Alcala
and Hanks.

 

 











[1]
The clerk’s record includes a 3-page affidavit
sworn 3 days after the child’s birth, which stated:

 

. . . .

 

On November 8, 2006, the Texas Department of Family
and Protective Services received a referral alleging the physical abuse of
[V.V.], by her mother . . . .  The report
indicated that [the mother] and the child [V.V.] tested positive for Opiates.

 

. . . .

 

[The mother] told me that [J.V.] was the father of
[V.V.] and stated that he is in jail for robbery. . . . 

 

I located [J.V.] in the Harris County Jail and
attempted to interview him at 1200 Baker Street; however, he was in
quarantine.  I left the notice of removal
for him . . . .

 





[2]
See, e.g., In
re M.R., 243 S.W.3d 807, 819 (Tex. App.—Fort Worth 2007, no pet.) (holding
that father’s imprisonment, along with drug use, criminal conduct, and allowing
child to live with known drug users, constitutes endangerment); In re J.T.G.,
121 S.W.3d 117, 131 (Tex. App.—Fort Worth 2003, no pet.) (holding that father’s
incarceration before and during pregnancy, coupled with drug and alcohol abuse,
is sufficient to support finding of endangerment); In re U.P., 105
S.W.3d 222, 235–36 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (holding
that father’s imprisonment, plus supply of drugs to mother during pregnancy and
personal drug use, was sufficient to show endangerment); Robinson v. Tex.
Dep’t of Protective & Regulatory Servs., 89 S.W.3d 679, 686–87 (Tex.
App.—Houston [1st Dist.] 2002, no pet.) (holding that mother’s imprisonment and
drug use in violation of community supervision constitutes endangerment); In
re S.D., 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied)
(holding that parents’ imprisonment, in addition to drug use and continuous
criminal activity, is sufficient to support finding of endangerment); see
also Padilla v. Dep’t of Family & Protective Servs., No.
01-07-00313-CV, 2008 WL 525750, at *1–2 (Tex. App.—Houston [1st Dist.] Feb. 28,
2008, no pet.) (mem. op.).





[3] Rule 404(b) does not require a final conviction as a
predicate to admission of extraneous offense evidence of other “wrongs or
acts,” if that evidence is otherwise relevant and admissible.  See
Tex. R. Evid. 404(b)..  The evidence of the assault was relevant.  See Tex. Fam. Code Ann.
§ 263.307(b)(7) (Vernon 2008) (providing that, when determining best
interest of a child in a DFPS permanency hearing, the trial court is to
consider “whether there is a history of abusive or assaultive conduct by the
child’s family or others who have access to the child’s home.”);  In re
R.R., 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (holding that trial
courts should consider the section 263.307(b) factors when determining child’s
best interest).  





[4]
Take no solace in the dissent’s suggestion that
this child could remain in state care in the future even if this court were to
render judgment for the father (as the panel had) because, it theorizes, the
father’s counsel did not adequately challenge the conservatorship order.  In his brief, the father challenges the
sufficiency of the evidence and expressly asks in his prayer for relief “that
the Court reverse the judgment terminating his parental rights to V.V. and
the appointment of DFPS as her sole managing conservator.”  Even if counsel had not requested such relief,
under the dissent’s view, such a failure would have amounted to ineffective
assistance, given its position that the father should prevail outright on
appeal.  Even if it was borne out in the
briefing, a childhood should not be hobbled by the dim prospect of unending
state conservatorship without hope of adoption or a permanent home.





[5] The Texas Supreme Court has held that a parent may
raise an ineffective assistance of counsel claim on appeal despite the failure
to include it in a statement of points.  In
re J.O.A., 283 S.W.3d 336, 339 (Tex. 2009). 
Thus, the father may raise this issue on appeal even though trial
counsel did not assert it in his statement of appellate points.  Id.; see Tex. Fam. Code Ann. §
263.405(i) (Vernon 2008) (“The appellate court may not consider any issue that
was not specifically presented to the trial court in a timely filed statement
of the points on which the party intends to appeal or in a statement combined
with a motion for new trial.”).

 





[6] In these unusual circumstances—in which a panel of
this court struck the original brief and abated the case for appointment of new
counsel well after the case was on appeal—we afford the father in this case a
limited opportunity to seek abatement and trial court findings of deficient
performance and resulting prejudice, similar to Strickland petitioners who seek post-conviction habeas corpus
review in the criminal law context.  In
the ordinary case, such a showing should be made in the trial court post-trial
or otherwise be evident from the record.  See M.S., 115 S.W.3d at 546.