

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00060-CV

_____

IN THE INTEREST OF A.A. AND A.A., CHILDREN

On Appeal from the 276th District Court
Marion County, Texas
Trial Court No. 13-00152

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

Scott, who is no stranger to incarceration and whose admitted "demon" is alcohol, has admittedly regularly used illegal drugs and abused alcohol. Scott was in prison for felony driving while intoxicated (DWI) and domestic assault on Amy, the mother of his two young children, when the Texas Department of Family and Protective Services (the Department) filed the petition to terminate Scott's parental rights to those children.[1] After a bench trial, Scott's parental rights to the children were terminated based on affirmative trial court findings under Section 161.001(1)(D), (E), and (Q) of the Texas Family Code[2] and a finding that termination was in the children's best interests. On appeal, Scott challenges the legal and factual sufficiency of the trial court's three Section 161.001(1) findings and the best-interest finding. We affirm the trial court's order because (1) sufficient evidence established at least one predicate act under Section 161.001(1) and because (2) sufficient evidence established that termination was in the children's best interests.

---

[1] In this opinion, we refer to appellant as "Scott," to the children's mother as "Amy," and to the children by the initials "A.A.-1" and "A.A.-2," in order to protect the identities of the children. *See* TEX. R. APP. P. 9.8.

[2] The trial court found, by clear and convincing evidence, that Scott:

> (1)    knowingly placed or knowingly allowed the child[ren] to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[ren], pursuant to § 161.001(D) of the Texas Family Code;
>
> (2)    engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct which endangers the physical or emotional well-being of the child[ren], pursuant to § 161.001(1)(E), Texas Family Code;
>
> (3)    knowingly engaged in criminal conduct that has resulted in [his] conviction of an offense and confinement or imprisonment and inability to care for the child[ren] for not less than two years from the date of filing the petition, pursuant to § 61.001(1)(Q) of the Texas Family Code.

Parental rights may be terminated when the court finds clear and convincing evidence that termination is in the best interest of the child and that the parent has engaged in one of the statutory grounds for termination. TEX. FAM. CODE ANN. § 161.001 (West 2014); *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.). Here, the trial court found three statutory grounds to support termination. "If multiple predicate grounds are found by the trial court, we will affirm based on any one ground because only one is necessary for termination of parental rights." *In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.).

The standard of review in parental rights termination proceedings is clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). The evidence is clear and convincing when the proof is such that it produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established by the State. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

In a legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder could reasonably have formed a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005); *J.L.B.*, 349 S.W.3d at 846. We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding if a reasonable fact-finder could do so and disregarded evidence that the fact-finder could have reasonably disbelieved or whose credibility could reasonably be doubted. *J.P.B.*, 180 S.W.3d at 573.

3

In our review of factual sufficiency, we give due consideration to evidence that the trial court could have reasonably found to be clear and convincing. *C.H.*, 89 S.W.3d at 27. We consider whether disputed evidence is such that a reasonable fact-finder could not have resolved that disputed evidence in favor of its finding. *Id.* at 28. If, in weighing the disputed evidence, the fact-finder could have reasonably resolved the conflicts to form a firm conviction that allegations concerning the grounds for termination were true, then the evidence is factually sufficient and the termination findings must be upheld. *Id.* at 18–19. In applying this standard in light of the "clear and convincing" burden required by Section 161.001 of the Texas Family Code, we must be careful not to "'be so rigorous that the only factfindings that could withstand review are those established beyond a reasonable doubt.'" *In re R.A.L.*, 291 S.W.3d 438, 443 (Tex. App.—Texarkana 2009, no pet.) (quoting *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006)).

The evidence shows that Scott, Amy, and the children were living together in Minnesota in the summer of 2013 when Scott was arrested for DWI. At the time of the arrest, Scott was serving a four-year probationary term for felony domestic assault of Amy by strangulation after he was convicted on that charge in June 2011. The assault happened when Scott choked Amy after he had admittedly been drinking. Although Scott was convicted only once for assaulting Amy, the record indicates that the couple fought quite frequently.

In addition to violence, Scott and Amy's relationship was also fraught with substance abuse. Scott was aware of the fact that Amy used drugs and abused prescription pain medication and readily admitted that he had used marihuana, cocaine, and methamphetamine. Although Scott has also abused Ritalin in the past, he admitted that alcohol was his "demon."

4

After his DWI arrest, Scott traveled to Texas with Amy and the children in violation of the terms of his probation. In July 2013, Scott was arrested in Longview, Texas, on a Minnesota warrant for the pending out-of-state DWI charge.[3] Scott was returned to Minnesota, leaving Amy and the children on their own. The following month, the Department received a report of Amy's neglectful supervision of the children. On investigation of this report, Amy was found unresponsive with the children in her care. Evidently, Amy's state of unresponsiveness was precipitated by a seizure after she ingested methamphetamine, marihuana, and prescription medication.[4]

After Amy was found in a state of unconsciousness, the children were placed with Amy's parents, who were responsible for supervising Amy around the children. When Amy was involved in a physical altercation with her mother and brothers, Amy and the children were placed in a drug-treatment facility.[5] That placement ended after only eight days, when Amy was arrested for disorderly conduct occurring within the facility. Based on these events, the Department determined that Amy was a danger to the safety of the children while in her presence

---

[3]Scott got into an argument with Amy's father in Longview, and Amy contacted law enforcement. Scott was arrested when the Minnesota warrant was discovered.

[4]Amy told the Department investigator that she had been smoking methamphetamine and marihuana and that she was under the influence of those substances while the children were in her care. Although Amy's parental rights to the children were likewise terminated, she is not a party to this appeal.

[5]The facility permitted mothers to be placed with their children in a supervised and controlled environment.

and under her care.[6] Because other avenues of placement were exhausted, the children were placed in foster care.[7]

At the time of these occurrences, and at the time of trial, Scott was being held by the Minnesota Department of Corrections on a forty-six-month sentence for his 2013 felony DWI conviction. He is also concurrently serving a twenty-four-month sentence for assaulting Amy, his probation for that conviction having been revoked. Scott is scheduled to be released from prison in February 2016, at which point he will be on supervised release until May 2017.

Having previously been convicted for the assault of his stepmother in 1997 and for vehicular homicide in an alcohol-related accident in 2003, Scott was not a stranger to the prison system.[8]

While incarcerated, Scott applied himself in an attempt to comply with a family service plan. He complied with the requirement that he correspond with his children and with Vickie Burns, the children's Department caseworker. Scott's plan also required his participation in whatever services were offered by the prison, although the only such service Burns was aware of was a life-skills class, which Scott plans to take. Scott is also scheduled to participate in the prison's alcohol and substance abuse treatment program when a space becomes available. Because he has been incarcerated, Scott has not seen the children since his arrest in July 2013, and he has not been able to provide financial support for them at any time during the pendency of

[6]At the time of trial, the children were one- and two-years old. They had been placed with a foster family.

[7]Amy's mother expressed her desire that the children be placed in foster care because she could not control Amy's drug-induced behavior. She also believed—apparently with good reason—that Amy was a physical threat to her.

[8]Scott was incarcerated for forty-eight months on the vehicular homicide conviction and was released in 2006.

the Department's ten-month involvement with the family. Scott indicated that he was the children's primary caregiver before his incarceration and has expressed a positive interest in the children. Although Scott requested that the Department conduct a home study of the home of Pam Karahalios—Scott's foster mother—that study was not undertaken due to the Department's decision to seek termination of Scott's parental rights.

*(1)    Sufficient Evidence Established at Least One Predicate Act under Section 161.001(1)*

The trial court found Section 161.001(1)(E) as one ground for termination of Scott's parental rights. This provision of the Texas Family Code states that parental rights may be terminated on a showing of clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(1)(E). Scott contends the record is devoid of evidence that he did anything to endanger the physical or emotional well-being of his children at the time of the Department's investigation because he was incarcerated in Minnesota. He contends that all of the Department's evidence related to Amy's actions, and his mere imprisonment will not suffice to prove this allegation. In support of this contention, Scott relies on *Walker v. Department of Family and Protective Services*, 251 S.W.3d 563 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Walker, like Scott in this case, was in jail at the time the Department investigated and removed the children from their mother's care. *Id*. at 565. Walker argued the evidence was insufficient to support termination of his parental rights. *Id*. The appellate court agreed, noting that (1) the Department failed to respond to Walker's evidentiary sufficiency argument by citing

7

to any facts in the record to support termination, (2) Walker was in jail at the time the children's mother committed acts that led to the termination of her parental rights, and (3) "the fact that a parent is incarcerated, standing alone, does not constitute engaging in conduct that endangered a child's physical or emotional well-being." *Id*. at 565–66 (citing *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533–34 (Tex. 1987)).

This case, however, is easily distinguished from *Walker*. Here, the record contains ample evidence to support termination under subsection (E). *See* TEX. FAM. CODE ANN. § 161.001(1)(E). In subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the children's emotional or physical well-being was the direct result of Scott's conduct, including acts, omissions, or failures to act. *See* TEX. FAM. CODE ANN. § 161.001(1)(E); *In re N.S.G.*, 235 S.W.3d 358, 366–67 (Tex. App.—Texarkana 2007, no pet.); *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet). It is not necessary that the parent's conduct be directed at the child or that the child actually suffer injury. *Boyd*, 727 S.W.2d at 533. The Department points to evidence of Scott's actions which endangered the children, including evidence of domestic violence, drug use, criminal conduct, incarceration, and a lack of stability.

As set out above, Scott is presently incarcerated for assaulting Amy by strangulation and was previously incarcerated for assaulting his stepmother. The evidence further indicates that Scott and Amy frequently fought and that Scott was easily provoked to anger. Domestic violence, want of self-control, and the propensity for violence may be considered as evidence of endangerment. *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no

8

pet.); *In re J.A.W.*, No. 06-09-00068-CV, 2010 WL 1236432, at *7 (Tex. App.—Texarkana Jan. 26, 2010, pet. denied) (mem. op.); *see In re C.J.O.*, 325 S.W.3d 261, 265 (Tex. App.—Eastland 2010, pet. denied) (domestic violence may be considered evidence of endangerment); *In re B.J.B.*, 546 S.W.2d 674, 677 (Tex. App.—Texarkana 1977, writ ref'd n.r.e.) (considering father's lack of self-control and violent propensities); *see also In re D.O.*, 338 S.W.3d 29, 34 (Tex. App.—Eastland 2011, no pet.) (one parent's abuse of other parent can support endangerment finding).

The evidence here also reflects Scott's history of alcohol and illegal drug use. Scott's alcohol use resulted in his felony DWI conviction following a previous conviction for vehicular homicide in an alcohol-related accident. According to Scott's testimony, his strangulation of Amy was a direct result of alcohol abuse. A history of drug or alcohol abuse represents "conduct that subjects . . . children to a life of uncertainty and instability, thereby endangering their physical and emotional well-being." *In re A.B.*, 125 S.W.3d 769, 777 (Tex. App.—Texarkana 2003, pet. denied). This very conduct led to Scott's incarceration while the children were both quite young. And, while incarceration alone does not constitute endangerment, per se, "it is, however, a fact properly considered on the issue of endangerment." *In re J.W.*, 152 S.W.3d 200, 205 (Tex. App. Dallas—2004, pet. denied) (citing *Boyd*, 727 S.W.2d at 533–34). "The petitioner need not show that imprisonment was a result of a course of conduct that endangered the child. Rather, it must only be shown that imprisonment was a part of a course of endangering conduct." *Id*. A finding under subsection (E) is supportable when the evidence, including imprisonment,

9

proves a course of conduct that has the effect of endangering the child's physical or emotional well-being. *Boyd*, 727 S.W.2d at 533–34.

Scott regularly abused alcohol, which resulted in two incarcerations, and, according to Scott, contributed to his violent behavior. Scott's incarceration limited his ability to provide for his children, with whom he had no physical contact from the time he was incarcerated. "Intentional criminal activity which expose[s] the parent to incarceration is relevant evidence tending to establish a course of conduct endangering the emotional and physical well-being of the child." *In re A.W.T.*, 61 S.W.3d 87, 89 (Tex. App.—Amarillo 2001, no pet.) (per curiam) (citing *Allred v. Harris Cnty. Child Welfare Unit*, 615 S.W.2d 803, 806 (Tex. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.)). Here, the evidence paints a picture of a long history of irresponsible choices which were ultimately detrimental to the emotional and physical well-being of Scott's children.

Scott directs us to evidence that he cared for the children, that he worked steadily to support the family, and that he was a good father. Under the appropriate standards of review, however, this evidence does not render the evidence legally or factually insufficient to support the trial court's finding under Section 161.001(1)(E). After reviewing the evidence in both the light most favorable to the findings and in a neutral light, we find that the trial court could have reasonably formed a firm belief or conviction that Scott engaged in a course of conduct, including drug and alcohol abuse and violent behavior against the children's mother, both of which resulted in incarceration, which had the effect of endangering the children's physical and emotional well-being.

10

Because we find that sufficient clear and convincing evidence supports the trial court's finding that Scott's parental rights should be terminated pursuant to Section 161.001(1)(E), we need not address the remaining statutory grounds for termination found by the trial court. *See In re N.H.*, 122 S.W.3d 391, 401 (Tex. App.—Texarkana 2003, pet. denied).

*(2)     Sufficient Evidence Established that Termination Was in the Children's Best Interests*

To uphold the termination finding, we must also determine whether the Department proved, by clear and convincing evidence, that the termination of Scott's parental rights was in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(2). There is a strong presumption that a child's interest is best served by preserving conservatorship in the natural parent. That presumption can be overcome, however, with clear and convincing evidence to the contrary. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam); *J.L.B.*, 349 S.W.3d at 848.

A number of factors may be considered in determining the best interest of the child, including (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

Establishing the best interest of the child, however, neither requires proof of any unique set of factors nor limits proof to any specific factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex.

App.—Fort Worth 2001, no pet.). There is no requirement that the party seeking termination prove all nine factors. *C.H.*, 89 S.W.3d at 27. The analysis of evidence relating to one factor may be adequate in a particular situation to support a finding that termination is in the best interest of the child. *In re N.L.D.*, 412 S.W.3d 810, 819 (Tex. App.—Texarkana 2013, no pet.). Evidence supporting the termination of parental rights is also probative of best interest. *C.H.*, 89 S.W.3d at 28.

Here, the children's desires cannot be determined because of their young ages. The testimony indicates, however, that the children have been well cared for by their foster family, with whom they have been living for approximately ten months. The children were ages one year and two months, respectively, when placed with their foster family. This family, especially for the younger child, is the only one they know. In considering this evidence, the trial court was entitled to assign greater weight to the bond established between the children and their foster parents in light of the fact that Scott had been absent for almost half of A.A.-1's life and almost the entirety of A.A.-2's life. The foster family is willing and able to provide a stable, nurturing, and loving environment for both children, who are currently adoptable.

Although Scott argues that he provided good care to his children before being incarcerated and expressed the intent to participate in a substance abuse/alcohol treatment program in prison when a space became available, several factors weigh against Scott's desire to maintain his parental relationship with the children.

Of paramount importance to the children's present and future physical and emotional needs is the need for permanence. *J.A.W.*, 2010 WL 1236432, at *5; *In re C.J.F.*, 134 S.W.3d

12

343, 351 (Tex. App.—Amarillo 2003, pet. denied).  Here, Scott has exhibited a history of poor decisions, some of which have resulted in his repeated incarceration.  Scott's current and past incarcerations make his future uncertain.  *See In re M.D.S.*, 1 S.W.3d 190, 200 (Tex. App.— Amarillo 1999, no pet.).

Additionally, the evidence of Scott's illegal drug use and alcohol abuse is relevant in determining whether he poses a present or future risk of physical or emotional danger to the children.  *See In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.).  We have already described Scott's substance abuse and the consequences of that abuse.  As past is often prologue, the trial court could have formed a firm belief or conviction that Scott's past endangering conduct would recur after his release from prison in 2016.  *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.— Amarillo 2011, no pet.) (trier of fact may infer parent's past endangering conduct may recur in the future, on child's return to parent).  This evidence, together with Scott's inability to maintain a stable home for the children due to his incarceration, supports the best-interest finding.

Scott's history of assaultive conduct within the family should also be taken into account when determining if termination is in the children's best interests.  *See In re J.A.P.*, No. 06-08-00092-CV, 2009 WL 839953, at *3 (Tex. App.—Texarkana Mar. 31, 2009, no pet.) (mem. op.).  The evidence establishes a history of domestic assault and alcohol-related criminal conduct.

On the issue of parenting skills—or the lack thereof—the evidence establishes that Scott was aware of Amy's abuse of prescription medication when the couple lived together.  Scott informed the Department's caseworker, Vickie Burns, that he was aware of Amy using pills

13

while they were together. Scott's foster mother testified that Scott discussed Amy's abuse of prescription medications with her, and she was likewise aware of Amy's drug use while the couple lived together with the children.

Based on this record, under the standards as set out above, we conclude that there is both legally and factually sufficient evidence to support the trial court's finding that the children's best interests were served by the termination of Scott's parental rights. Therefore, Section 161.001(2) of the Texas Family Code has been met. *See* TEX. FAM. CODE ANN. § 161.001(2).

We affirm the trial court's judgment.


                                        Josh R. Morriss, III
                                        Chief Justice


Date Submitted:        September 11, 2014
Date Decided:          October 23, 2014

14