

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00017-CV

_____

IN THE INTEREST OF J.G. AND T.S.A.G., CHILDREN

On Appeal from the County Court at Law
Lamar County, Texas
Trial Court No. 86294

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

Jake's[1] and Tara's use of illegal drugs resulted in the Texas Department of Family and Protective Services (the Department) taking custody of their seven children. In this case, the Department sought termination of the parental rights of Jake and Tara to their two youngest children, J.G. and T.S.A.G.[2] After a hearing, the trial court found that there were statutory grounds[3] to terminate the parental rights of Jake and Tara and that termination was in the best interests[4] of J.G. and T.S.A.G. On appeal, Jake challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that there were statutory grounds to terminate his parental rights.[5] Jake and Tara challenge the legal and factual sufficiency of the evidence supporting the trial court's finding that termination of their parental rights was in the best interests of J.G. and T.S.A.G. Because we find that sufficient evidence supports the trial court's findings, we will affirm the trial court's judgment.

## I.    Background

At trial, the evidence showed that the five older children were removed from the family home on March 8, 2017, because of ongoing drug use, conditions of the home, and the history of

---

[1]We refer to the children by their initials and to their family members by pseudonyms. *See* TEX. R. APP. P. 9.8(b)(2).

[2]In a separate order, the trial court appointed the maternal great-grandparents permanent managing conservators of the five older children and appointed Jake and Tara as possessory conservators.

[3]*See* TEX. FAM. CODE ANN. § 161.001(b)(1) (West Supp. 2017).

[4]*See* TEX. FAM. CODE ANN. § 161.001(b)(2) (West Supp. 2017).

[5]The trial court found that the grounds set forth in subsections (D), (E), (F), (N), (O), and (P) of Section 161.001(b)(1) supported termination of Jake's parental rights. *See* TEX. FAM. CODE ANN. § 161.001(b)(1) (D), (E), (F), (N), (O), (P) (West Supp. 2017).

violence. In interviews, the children (1) told investigators that both of their parents used marihuana, (2) could explain how to smoke it, and (3) told investigators that their parents would "act out of their heads," then pass out. Jake was present during the removal process and exhibited red and glassy eyes, slurred speech, and a fuzzy and confused demeanor. Tiffany Massey testified that Jake appeared to be under the influence of a mind-altering substance. She also testified that the Department had been involved with the family since the birth of the first child[6] and had attempted to deal with the same issues of drugs, family violence, and neglect, with little or no success. Massey reported that J.G. had previously been removed from the home in July 2015, after both J.G. and Tara tested positive for methamphetamine at his birth,[7] and that Tara had admitted that she had used methamphetamine weekly during her pregnancy. T.S.A.G. was born on March 27, 2017, tested positive for methamphetamine, and was removed two days later. She has been in the care of Randy Smith and his wife since that time.

The evidence also showed that, during the course of the case, Tara did not attend the court-ordered drug treatment, missed several of her required drug tests, and tested positive for methamphetamine at least once. In September 2017, she admitted that she used methamphetamine and that she was arrested for possession of a controlled substance in November 2017. There were several months in which she could not be found, and after she got out of jail, she refused to tell the Department where she was living. Tara attended nine scheduled visitations with the children, but

---

[6]The oldest child was nine years old at the time of trial.

[7]Apparently, J.G. was returned to the family home for some period of time, but was voluntarily allowed to live with a couple, the Elizondos, with whom Tara was acquainted after a short period of time. J.G. has been in the Elizondos' care since that time. At the time the other children were removed, J.G. resided with the Elizondos. J.G. was joined in the case and taken into the Department's custody on March 15, 2017.

her visitation was suspended in July 2017 for non-compliance with her family service plan. Although the suspension order provided that her visitation would be restored if she produced a negative drug test, Tara never provided the Department with one. In addition, in September 2017, Tara was arrested for possession of synthetic marihuana, for which she was convicted. At the time of trial, Tara had a pending felony possession of a controlled substance charge. Tara had not completed the requirements of her family service plan, as ordered by the trial court, at the time of trial.

Tara testified that she was currently living with Jake's mother and that she was not working. She admitted that she has struggled with drugs, but claimed that she was sober, going to church, and attending Celebrate Recovery once a week. She testified that she was not currently in a relationship with Jake, but that she was not going to give up on him. She claimed that she had been in a GED program before she was arrested and that she planned to start again. Tara also testified that she had an offer of community supervision with Substance Abuse Felony Punishment (SAFP) in her pending criminal case.

On May 30, 2017, Jake brutally beat Tara, knocking her unconscious and putting her in the hospital.[8] This resulted in Jake's arrest and conviction for family violence assault causing bodily injury, two or more times within twelve months. Jake received a sentence of ten years' imprisonment, which was suspended, and he was placed on community supervision with conditions that he attend and complete SAFP, anger management classes, and parenting classes.

---

[8]The evidence showed that Jake beat Tara so severely that she was bruised from head to toe, one eye was swollen shut, and blood covered both Tara and the inside of the horse trailer where they were staying.

4

Although both Jake and Tara asserted at trial that he had only been drinking alcohol on the night of the beating, Tara admitted that she may have told the police that Jake had been using drugs.

Jake testified that he had been diagnosed as bi-polar and that he was not taking his medications when the case began. When he does not take his medications, he becomes manic, sporadic, paranoid, and delusional. He claimed that he is doing well in SAFP and that his problems stemmed from not taking his medication. Jake admitted that there was no guarantee that he would not stop taking his medication again, but did not think that posed a danger to his children.

Jake denied using methamphetamine, but offered no testimony regarding his use of other illegal substances. Other testimony showed that Jake had admitted using marihuana and methamphetamine when he was fifteen or sixteen. Further, in 2013 and 2015, he and Tara had had encounters with the Department that involved reports of domestic violence and use of drugs at Jake's mother's house, where they resided with their children.[9] He admitted that he knew that Tara tested positive for methamphetamine during her pregnancy with J.G. However, he denied any knowledge of Tara's continued use of methamphetamine.

Before his arrest, Jake attended four out of seven scheduled visitations with the children. Although he did not have a positive drug test, he failed to go to a drug test on March 31, 2017, and in May 2017, he came to the caseworker's office in an intoxicated state, with blood-shot eyes, and with his thought processes not intact, and made paranoid accusations against Tara. Jake did not complete any of his court-ordered services.

---

[9]In the 2013 encounter, Jake, Tara, and the other adults refused to take drug tests. In the 2015 encounter, Tara tested positive for methamphetamine while pregnant with J.G., resulting in the removal of J.G. after his birth.

5

## II.     Standard of Review

"Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014).  We are therefore required to "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *Id*. at 500.  "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)).

A trial court may terminate parental rights only if it finds, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest.  TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2017); *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012).  "Clear and convincing evidence" is that "degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  TEX. FAM. CODE ANN. § 101.007 (West 2014); *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).  This standard of proof necessarily affects our review of the evidence.

In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.).  We assume the fact-finder resolved disputed facts in favor of its finding, if a reasonable fact-finder

6

could do so, and disregarded evidence that it could have reasonably disbelieved or the credibility of which reasonably could be doubted. *J.P.B.*, 180 S.W.3d at 573.

In our factual sufficiency review, due consideration is given to evidence the trial court could have reasonably found to be clear and convincing. *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam). We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine "whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations." *Id.* at 108 (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)); *In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *J.F.C.*, 96 S.W.3d at 266. "[I]n making this determination," we must undertake "an exacting review of the entire record with a healthy regard for the constitutional interests at stake." *A.B.*, 437 S.W.3d at 503 (quoting *C.H.*, 89 S.W.3d at 26).

Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, "the rights of natural parents are not absolute; protection of the child is paramount." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *C.H.*, 89 S.W.3d at 26).

### III.    Analysis

#### A.    Sufficient Evidence Supports Termination of Jake's Parental Rights

##### 1.    Termination under Subsection (E)

In his first issue, Jake asserts that the evidence is legally and factually insufficient to support the statutory grounds for termination found by the trial court. As previously noted, the trial court found that subsections (D), (E), (F), (N), (O), and (P) of Section 161.001(b)(1) supported termination of Jake's parental rights. *See* TEX. FAM. CODE ANN. § 161.001(b)(1) (D), (E), (F), (N), (O), (P). When there is a finding that termination is in the best interest of the child, a single predicate finding under Section 161.001(b) will support a termination judgment. *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied) (citing *A.V.*, 113 S.W.3d at 362); *In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.)); *see In re N.R.*, 101 S.W.3d 771, 775 (Tex. App.—Texarkana 2003, no pet.). We find that sufficient evidence supports the trial court's finding under subsection (E).

Under subsection (E), a person's parental rights may be terminated if he or she "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). "'Endanger' . . . 'means to expose to loss or injury . . . .'" *In re N.S.G.*, 235 S.W.3d 358, 367 (Tex. App.—Texarkana 2007, no pet.) (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). Termination under subsection (E) must be based on more than a single act or omission. Instead, a "voluntary, deliberate, and conscious course of conduct by the parent is required." *Perez v. Tex. Dep't of Protective & Regulatory Servs.*, 148 S.W.3d 427, 436 (Tex.

8

App.—El Paso 2004, no pet.) (citing *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.)); *see Boyd*, 727 S.W.2d at 533; *N.S.G.*, 235 S.W.3d at 366–67.

It is not necessary that the conduct be directed at the child or that the child actually suffer injury. Under subsection (E), it is sufficient that the child's well-being is jeopardized or exposed to loss or injury. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *N.S.G.*, 235 S.W.3d at 367. A fact-finder "can 'consider the history of abuse between the mother and the father for purposes of subsection[] . . . (E), even if the children are not always present.'" *In re Z.M.*, 456 S.W.3d 677, 686 (Tex. App.—Texarkana 2015, no pet.) (quoting *In re A.V.M.*, No. 13-12-00684-CV, 2013 WL 1932887, at *5 (Tex. App.—Corpus Christi May 9, 2013, pet. denied) (mem. op.)). Further, "the endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage." *J.O.A.*, 283 S.W.3d at 345.

"[C]onduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. Drug use and its effect on a parent's life and his ability to parent may establish an endangering course of conduct." *J.L.B.*, 349 S.W.3d at 848 (quoting *In re N.S.G.*, 235 S.W.3d 358, 367–68 (Tex. App.—Texarkana 2007, no pet.)); *see J.O.A.*, 283 S.W.3d at 345 n.4; *In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.) ("Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of endangering the child."). "Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under" subsection (E). *Walker*

*v. Tex. Dep't Family & Protective Servs.*, 312 S.W.3d 608, 617–18 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing *Vasquez v. Tex. Dep't Protective & Regulatory Servs.*, 190 S.W.3d 189, 195–96 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("terminating parental rights despite there being no direct evidence of parent's continued drug use actually injuring child")). While we recognize that imprisonment, standing alone, is not conduct which endangers the physical or emotional well-being of the child, "intentional criminal activity which expose[s] the parent to incarceration is relevant evidence tending to establish a course of conduct endangering the emotional and physical well-being of the child." *In re A.W.T.*, 61 S.W.3d 87, 89 (Tex. App.—Amarillo 2001, no pet.) (per curiam) (citing *Allred v. Harris Cnty. Child Welfare Unit*, 615 S.W.2d 803, 806 (Tex. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.)).

In this case, the trial court heard testimony of Jake's history of drug and alcohol abuse, and his apparent conscious failure to take medications for his bi-polar condition, which culminated in his brutal beating of Tara on May 30. The trial court also heard testimony that showed that Jake allowed his older children to remain in an environment that involved both domestic violence and drug use, including while Tara was pregnant with J.G. Also, despite Jake's denials, the trial court could have determined that Jake knew Tara was using methamphetamine while she was pregnant with both J.G. and T.S.A.G.

Further, although Jake attributed his problems to his failure to take his medications, he could offer no assurance to the trial court that he would not choose to forego his medications in the future. In addition, he exhibited a lack of understanding that his failure to take his medications, which admittedly caused him to become manic, paranoid, and delusional, would pose any danger

10

to his children. This was in spite of the fact that Jake was incarcerated at the time of trial as a result of his beating of Tara, which was, at the least, the second time he committed an assault on a family member within twelve months.

Considering all of the evidence, we find that the trial court could have reasonably formed a firm belief or conviction that Jake engaged in a course of conduct which endangered the emotional or physical well-being of his children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *J.O.A.*, 283 S.W.3d at 345; *Z.M.*, 456 S.W.3d at 686; *J.L.B.*, 349 S.W.3d at 848. We overrule Jake's first issue.

### 2. Best Interest of the Children

Jake also challenges the factual and legal sufficiency of the evidence supporting the trial court's finding that terminating his parental rights is in his children's best interest. "There is a strong presumption that keeping a child with a parent is in the child's best interest." *In re J.A.S., Jr.*, No. 13-12-00612-CV, 2013 WL 782692, at *7 (Tex. App.—Corpus Christi Feb. 28, 2013, pet. denied) (mem. op.) (citing *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam)). "Termination 'can never be justified without the most solid and substantial reasons.'" *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)).

> In determining the best interests of the child, courts consider the following *Holley* factors:
>
> (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate

11

the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*Id.* at 818–19 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012); *see also* TEX. FAM. CODE ANN. § 263.307(b) (West Supp. 2017).

Proof of all of these factors is not a condition precedent to parental-rights termination. *C.H.*, 89 S.W.3d at 27; *N.L.D.*, 412 S.W.3d at 819. Evidence relating to a single factor may suffice in a particular situation to support a finding that termination is in the best interests of the child. *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.) (citing *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.), *disapproved on other grounds by J.F.C.*, 96 S.W.3d at 267 n.39). When considering the child's best interest, we may take into account that a parent is unable to provide adequate care for a child, lacks parenting skills, or exercises poor judgment. *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.).

Parental drug abuse, which reflects poor judgment, is also a factor that may be considered when determining the child's best interest. *In re M.R.*, 243 S.W.3d 807, 820 (Tex. App.—Fort Worth 2007, no pet.). Further, the amount of contact between the parent and child and the parent's failure to provide financial and emotional support, continuing criminal history, and past performance as a parent are all relevant in determining the child's best interest. *See C.H.*, 89 S.W.3d at 28. Finally, evidence showing the parent committed acts or omissions that would be statutory grounds for termination may also be probative that termination is in the best interest of the child. *Id.*

At the time of trial, J.G. was less than three years old, T.S.A.G was one year old, and neither child could express its desires, therefore this factor does not enter into our analysis. The evidence

showed that T.S.A.G. has continuously resided with the Smiths, her placement family, since she was two days old and that she is attached to them. The Smiths have provided T.S.A.G. with a safe, stable, drug-free, and violence-free environment. Mr. Smith testified that they want to adopt her and will allow visitation with her siblings.

J.G. has resided with the Elizondos, his placement family, for all but a few months of his life. The evidence showed that, even after J.G. was returned to his parents after his first removal, the parents voluntarily returned him to the Elizondos because the parents could not care for him. Testimony also showed that J.G. is very attached to the Elizondos, that he calls them mommy and daddy, and that he claims their last name. The Elizondos plan to adopt J.G. and will allow him to have a relationship with his siblings.

The evidence also showed that Jake had only visited his children four times during the case and that he had not taken advantage of any services that would address his drug and violence problems and enable him to become a better parent. As discussed above, the evidence also showed that his continued abuse of drugs and alcohol, his failure to properly treat his bi-polar condition, and his propensity for family violence have resulted in his incarceration and in an unsafe and unstable environment for his children. On this record, we find that the remaining *Holley* factors favor termination. *Holley*, 544 S.W.2d at 371–72.

Considering all of the evidence, we find that the trial court could have reasonably formed a firm belief or conviction that termination of Jake's parental rights was in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *C.H.*, 89 S.W.3d at 28. We overrule Jake's second issue.

13

**B.  Sufficient Evidence Supports Termination of Tara's Parental Rights**

In its judgment, the trial court found that there were statutory grounds for the termination of Tara's parental rights to J.G. and T.S.A.G under subsections (B), (D), (E), (F), (N), (O), and (P) of Section 161.001(b) and that termination was in the best interest of the children.  On appeal, Tara only asserts that there is legally and factually insufficient evidence to support the trial court's finding that termination was in the best interest of the children.

As noted above, the children were too young to express their desires; therefore, this *Holley* factor does not enter into our analysis.  We have also discussed the children's relationship with their respective placements, and we take that evidence into account when considering the remaining *Holley* factors.  The evidence showed that Tara used methamphetamine during her pregnancies with both J.G. and T.S.A.G. and that both children tested positive for methamphetamine at birth, prompting their removal.  In addition, the evidence showed that, when J.G. was returned to the family home about a year after his birth, Tara voluntarily requested the Elizondos permanently care for him, because she was unable to do so.  Tara continued to use drugs after this case began, resulting in both the revocation of her visitation privileges with the children and her arrest and conviction for possession of controlled substances.

At the time of trial, Tara was facing another felony possession of controlled substance charge from an arrest occurring six months after the case began.  Tara made little or no effort to complete any of the services offered by the Department to address her drug and parenting issues.  Further, although she asserted that she had recently become sober and was attending church and Celebrate Recovery, the trial court could discount this testimony considering she did not provide

14

the Department with a negative drug test. This was particularly telling since a negative drug test would have restored her visitation privileges. Finally, Tara's plans for her children if she retained her parental rights were indefinite and vague. On this record, we find that the remaining *Holley* factors favor termination. *See Holley*, 544 S.W.2d at 371–72.[10]

Considering all of the evidence, we find that the trial court could have reasonably formed a firm belief or conviction that termination of Tara's parental rights was in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *C.H.,* 89 S.W.3d at 28. We overrule Tara's sole issue.

For the reasons stated above, we affirm the judgment of the trial court.

Ralph K. Burgess
Justice

Date Submitted:     June 21, 2018
Date Decided:       August 1, 2018

---

[10]Because we find that the evidence is factually sufficient to support the trial court's judgment, we find that the evidence is legally sufficient as well.

15